Bonnie Jo (Schwartz) SUTTON, Plaintiff–Appellant,

v.

Francis W. SCHWARTZ, Defendant–Respondent.

No. 57619.

Missouri Court of Appeals, Eastern District, Northern Division.

April 30, 1991.

Russell John Kruse, Palmyra, for plaintiff-appellant.

James Daniel Terrell, Hannibal, for defendant-respondent.

SATZ, Judge.

This is a garnishment action. Ms. Bonnie Jo Sutton (mother) seeks to collect from Mr. Francis W. Schwartz (father) alleged arrearages in child support the father was ordered to pay in a dissolution decree entered in 1973. The mother also seeks attorney's fees.

The trial court heard and granted the father's motion to quash the garnishment. It denied the mother's request for attorney's fees. The mother appeals.

Our review is governed by Rule 73.01(c) and *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The judgment will be sustained unless there is not substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.* We accept as true the evidence and permissible inferences which may be drawn favorable to the father, as the prevailing party below, and disregard contradictory testimony. *Snowden v. Gaynor*, 710 S.W.2d 481, 483 (Mo. App.1986).

Viewing the record in this light, most of the mother's points on appeal have no merit. However, the record does show the father may owe unpaid child support. We, therefore, reverse the trial court's order quashing the garnishment and remand this cause to the trial court to determine, on the present record, the amount of unpaid child support, if any, the father owes, to determine whether the mother is entitled to attorney's fees for a successful prosecution of the garnishment, and to enter an appropriate judgment.

### Mother's Request for Findings of Fact and Conclusions of Law

The trial court denied the mother's request for Findings of Fact and Conclusions of Law because it found her request to be untimely. To us, the record does not clearly show the mother's request was untimely. But, the lack of specific findings, for the most part, does not hinder us in reviewing the mother's appeal. The record discloses the issues of fact which were before the trial court, and the record, particularly the trial court's letters to counsel after the hearing, also shows what most of the trial court's findings of fact would be. Although the findings in the letters were not made in direct response to the mother's request, they are part of the record now before us, and we may consider them to determine whether the lack of formal findings prejudiced the mother. *See Weiss v. Weiss*, 702 S.W.2d 948, 951 (Mo.App.1986). Moreover, to the extent we are able to, we will set to rest most of the issues now before us in this ongoing battle of 18 years. *See, e.g. Gardner, Inc. v. Beanland*, 611 S.W.2d 317, 321 (Mo.App.1980).

### Procedural History

The marriage of the parties was dissolved in 1973. The mother was awarded custody of the parties' three children: Lisa, born, 1960; Sheryl, born 1965; and Greg, born 1968. The father was ordered to pay a lump sum of $175 per month as support for the children, and to pay the mother maintenance of $5,000 in 10 annual payments of $500.

In January, 1986, the mother filed a garnishment against the father's bank account, alleging a child support arrearage of $3,705. The garnishment was quashed when the mother failed to appear at a hearing. This order to quash, apparently, was never vacated.

In July, 1986, the mother filed a second garnishment, alleging a child support arrearage of $4,505. The father did not contest this garnishment, and the mother recovered about $300 from the father's wages.

In November, 1988, the probate division of the court ordered $8,000 to be paid to the father as a partial distribution of an estate. The mother filed a general execution against this distribution, alleging a child support arrearage of about $16,240 in support and $6,900 in interest. The father filed the motion to quash in issue here. It was heard in January, 1989.

In February, 1989, the mother filed a motion for attorney's fees; in March, she filed a request for Findings of Fact and Conclusions of Law; and, in April, she filed a copy of her computation of arrearages as of April 1, 1989, showing arrearages of $11,803.31 support and $6,425.18 interest. The father formally objected to the mother's request for findings and conclusions as untimely.

In a letter to counsel in June, 1989, the trial court made "preliminary findings of fact". The court requested counsel to review the "findings" for error and, based on the "findings", to determine whether arrearages existed. The record before us does not contain any response from counsel.

Then, by a letter in July, 1989, the trial court modified and clarified its earlier preliminary findings. The court also informed counsel it would make no formal Findings of Fact or Conclusions of Law because it found the mother's request for the same to be untimely. The court also requested counsel to submit numerical calculations of the amount of support paid and alleged to be owed. There was no direct response to this request.

On November 20, 1989, the court ordered the garnishment quashed and ordered each party to pay his or her own attorney fees. The mother's appeal followed.

### Mother's "Waiver"

In March 1979, the oldest daughter, Lisa, moved from the mother's home. The trial court found that, at that time, the parties "agreed" to reduce the amount of child support payments from the decreed $175 per month to $120 per month. The court also found the mother "waived the decretal amount of support by agreeing to and acquiescing in the payment of a lesser sum without seeking any legal remedy for a period of seven years."

Basically, the mother contends the trial court erred in finding a "waiver" because this finding is based upon a non-existent agreement to reduce support. She attacks the existence of the agreement on three interrelated grounds. She contends 1) there was insufficient evidence to show the agreement was made; 2) there was no showing of consideration from the father to the mother in exchange for the alleged agreement, without which no agreement existed and, in turn, no "waiver" could occur; and 3) such an "out-of-court" agreement to alter support payments ordered by the court is unenforceable, and, therefore, cannot support a finding of "waiver". These arguments are misdirected and, thus, miss the mark.

◼ The mother correctly argues that an out-of-court agreement to change prospectively the amount of support due under a dissolution decree is not enforceable. *E.g., Foster v. Foster,* 703 S.W.2d 952, 954 (Mo.App.1986). Parties wishing to make such an agreement enforceable must petition the court to change the terms of the decree. *Id.* Past due payments of support, on the other hand, constitute a debt which the obligee can compromise by an agreement supported by adequate consideration. *Id.*

◼ There are circumstances, however, where a court may refuse to award the obligee the full amount of support allegedly due even in the absence of a court-ordered modification or an agreement to compromise past due amounts. *Grommet v. Grommet,* 714 S.W.2d 747, 749–51 (Mo. App.1986). This refusal may occur when it would be unjust to permit the obligee to collect the full amount due. *Id.* The refusal is based upon a concept labelled "waiver by acquiescence," which is actually an application of the doctrine of equitable estoppel. *Id.* at 750.

To explain the real meaning of this concept, this Court in *Grommet* analyzed those cases in which a "waiver" was found and pointedly noted that, in those cases, there existed facts showing more than a mere express or implied agreement to accept reduced payments or a mere delay in demanding full payment. *Id.* at 751. The Court said:

> [T]he defense denominated as waiver by acquiescence does not arise in the absence of some fact or circumstance

which warrants the invocation of equitable considerations in order to avoid injustice.... The concept called waiver by acquiescence is an equitable doctrine. We look, therefore, for some indicia of injustice such as a change in respondent's position induced by a misconception of the appellant's intent or the status of his court decreed obligation....

*Id.* at 751.

■ Thus, *Grommet* does not teach an out-of-court agreement to reduce child support prospectively is enforceable if supported by consideration, nor, conversely, does it teach that such an agreement is not enforceable unless supported by consideration. But, it does teach that it may be an injustice to permit an obligee to collect the full amount of child support due under a decree if the obligor changed position, to his or her prejudice, in reliance on a perceived agreement with the obligee. There was sufficient evidence in the present case for the court to have reached that conclusion.

■ The father could have reasonably perceived that he had reached an agreement with the mother to lower the child support payments. The father testified he made child support payments of $175 or $180 per month regularly from the date of the dissolution decree until March 1979. The oldest daughter left the mother's home and moved to Arizona at about that time. The father testified the mother then "agreed" to accept $120 per month, which she did, he said, without complaint. The court's records show the father paid $120 to the circuit clerk each month for almost five years, from March, 1979 through December, 1983. The father was not cross-examined about this agreement.

Admittedly, the mother denied any agreement to reduce the amount of support and testified she complained to him about the reduced support payments. The court, however, was not required to believe her. *T.B.G. v. C.A.G.,* 772 S.W.2d 653, 654 (Mo. banc 1989). Moreover, from the record it appears that she took no steps to recover the full amount due until she filed her garnishment in January, 1986. Thus, there was sufficient evidence that an "agreement" was made, and that, for seven years, the parties conducted themselves in a manner consistent with the "agreement."

There also was evidence to support the conclusion that it would be unjust to permit the mother to collect the full amount of support due under the decree. The court did not specifically identify the operative facts supporting this conclusion. But, the findings it did make are sufficient to support it.

As noted, the trial court found the mother agreed to accept a reduced amount of support from the father. She accepted this reduced amount, the court found, without protest for seven years. The court also found the father paid substantial excess amounts of child support in 1982, 1983 and 1984. These excess amounts were in the form of payments made directly to the mother and to the middle child, Sheryl, with the mother's consent. Although the court did not state how much it found the father had overpaid during this period, it is apparent from the evidence in the record that these payments were sufficient to offset the arrearages the mother claims existed then. Thus, it would be unjust to allow the mother to collect all that was due under the decree, since it is reasonable to assume the father would have taken steps to have these payments credited against his support arrearages had he known the mother planned to demand payment of the full decretal amount. Because it would work an injustice under the circumstances to hold the father liable for the full amount, the trial court did not err when it found a "waiver by agreement and acquiescence."

### Payments Made By Father

■ The mother also contends it was error for the trial court to find that any of the payments made directly to her were for child support. These payments, she contends, were really gifts, or were made to pay the father's own personal expenses, or to purchase health insurance for the children. We disagree.

The father testified he paid the mother the additional sums because "[t]he kids needed it. Sheryl was going to college." He confirmed several times that the money was for child support, and that the mother consented to the payments. He also testified that none of the payments to the mother were for anything other than child support. This is substantial evidence that the money was intended to be for child support.

The mother cites evidence to the contrary. She notes that the parties agreed the father lived with the mother for at least part of this period, and she testified that the payments were for her increased expenses. However, this evidence does not compel a finding that the payments were for anything other than child support. The trial court was free to disbelieve some, none or all of the mother's testimony. *T.B.G. v. C.A.G., supra,* 772 S.W.2d at 654. The father's testimony was sufficient to support the finding that the payments in question were for child support. *Murphy v. Carron, supra* 536 S.W.2d at 32.

The mother also argues it was error to credit payments made directly to Sheryl against the father's child support obligation, because there was no consideration given in exchange for the mother's agreement to credit these payments as support. We disagree.

■ As a general rule, a non-custodial parent's payments made directly to the children, or directly to others for the benefit of the children, cannot be credited against a child support obligation, except with the express or implied consent of the custodial parent or where compulsion of circumstances makes it necessary. *Cooper v. Allstate Ins. Co.,* 735 S.W.2d 204, 206 (Mo.App.1987). The custodial parent has the authority to determine how child support money is spent. Therefore, the non-custodial parent has no right to dictate the method of payment. *Id.* The parents can, however, agree to change the method of payment, which ensures that the custodial parent retains some control. *Id.* Since this does not compromise future support payments to the detriment of the children,

it does not require judicial modification of the dissolution decree. *Id.* And, since it also does not create an accord and satisfaction compromising existing child support arrearages, it does not require consideration paid to the mother to support the agreement. *Id.* at 207. Therefore, in the present case, the father did not need to show consideration flowing from him to the mother. On the present record, the trial court did not err in crediting the payments in issue against the child support obligation.

### Credit for Payments Less Than Lump Sum Award

■ The mother next makes two attacks upon the form this credit took. First, the mother argues, without citation, that it was improper for the trial court to give the father credit for only a portion of the payments to Sheryl. The mother contends the trial court had the power to award the father credit for all the payments, as the father requested, or for none of the payments, as the mother requested, but lacked the power to split the difference. We disagree.

■ The trial court, in determining the rights and liabilities of parties to a divorce decree, follows the rules and principles of equity. *Armstrong v. Armstrong,* 395 S.W.2d 484, 486 (Mo.App.1965). In equity, a general prayer for relief permits a balancing of equities within the scope of the pleadings and evidence. *Gassner v. Cromer,* 704 S.W.2d 695, 696 (Mo.App. 1986). Thus, a court is not limited to giving only the requested relief. *Id.* The father's motion to quash included a general prayer for relief. Thus, it was not error for the trial court to credit the father less than he requested, as long as the equities supported that result.

Second, the mother argues the trial court improperly divided up a lump sum child support award, by crediting the father $60 per month for sums paid directly to Sheryl, and by crediting the father $60 per month for a period during which he had custody of the youngest child, Greg. This crediting was improper, the mother argues, because

the dissolution decree here awarded child support as a "lump sum" of $175 per month, rather than as an amount per child per month.

 The mother correctly points out that when child support is awarded as a "lump sum," the obligor owes that amount until all the children are emancipated; the obligor is not permitted to reduce without court approval the amount owed pro rata as the children reach majority. E.g., *Holt v. Holt*, 662 S.W.2d 578, 580 (Mo.App.1983). The credit of $60 per month the trial court allowed the husband, the mother contends, represents such a prohibited pro rata reduction. We disagree.

*Holt* does not control. The rule applied in *Holt* is a rule of construction of dissolution decrees. The trial court here was not construing a decree; it had, in fact, decided the decree could not equitably be enforced. Rather, the court here was applying the rules of equity to fashion a just remedy.

The trial court's action was a reasonable exercise of its discretion. Having found the father was due some credit for the money paid directly to Sheryl, the court simply used the pro rata amount of support as a guide for determining and limiting the amount to be credited.

 Moreover, it was a reasonable exercise of discretion to credit the father $60 per month for the time he had custody of Greg. The trial court found the father had custody of Greg for nine months, from September 1983 to May 1984. This was not a situation contemplated by the dissolution decree. The decree awarded custody to the mother and permitted the father to exercise custody for up to 30 days each summer. The father's support obligations would abate if he had custody of all the children. The decree, however, made no provision for the father's extended custody of one of the children.

By her own admission, the mother asked the father to take custody of Greg for an extended period. The father testified he provided direct support to Greg in the form of food, living quarters and cash during this period. The trial court could properly take note of this and use the pro rata amount as a guide for limiting the credit it would award the father. Under these circumstances, it was not necessarily improper for the trial court to use the pro rata amount of child support as a guide for determining how to balance the equities. This is not, however, to be interpreted as permission for obligors to reduce lump sum support awards pro rata anytime a child is emancipated or the obligor takes temporary custody.

In summary, the trial court did not err in finding the mother had "waived" her right to collect child support in excess of $120 per month by her "agreement and acquiescence" and by her acceptance of substantial excess child support money directly from the father; nor did it err in crediting against the father's child support obligation those amounts paid directly to the mother and a portion of those amounts paid directly to the daughter, Sheryl.

### Reason For Remand

This does not fully resolve the question of the child support arrearage, however. On the record before us, we can determine that the substantial excess payments the father made in 1983 fully paid all the arrearage which had accrued prior to that date. Even viewing the evidence in the light most favorable to the father, however, it is clear that some unpaid support may have accrued after that date. But, we cannot determine the exact amount, if any.

From the record, it is clear that in March, 1979, when the parties "agreed" to reduce the amount of support, the father was in arrears. The trial court found the father was behind in his payments in the amount of $535 at that time. The mother claims a different figure, but for our purposes it is irrelevant which is correct. The trial court found the father made monthly payments of $120 to the court clerk from March, 1979 through December, 1983. Thus, no further arrears accrued during those years.

Beginning in 1982, and continuing into 1984, the father made substantial direct payments to the mother and to Sheryl, which we have decided were correctly cred-

ited against child support. We do not have the benefit of the trial court's findings as to the total of these support payments. Nevertheless, it is apparent from the exhibits reproduced in the legal file that these payments amounted to several thousand dollars. They were more than sufficient to offset, with interest, the arrearage which had accrued before February, 1979. Clearly, sometime in 1983 the arrearage was reduced to zero. Since the father continued to make monthly payments of $120 to the court clerk through December, 1983, we can and do decide and state with certainty that as of December 31, 1983, the father was current on his child support payments.

We cannot tell from the record, however, whether the father's payments directly to the mother and to Sheryl were sufficient to meet his support obligation over the next 10 months, when he was not making payments to the court clerk. We cannot, therefore, determine the amount of arrearages, if any, which accrued during the first 10 months of 1984.

The father resumed making monthly payments of $120 or more to the circuit clerk in November, 1984, and continued to do so through August, 1985. No arrearages accrued during those months. But, we cannot determine from the record whether the father made any direct payments to the mother or to Sheryl during those months, or, if he did, whether they were in amounts sufficient to offset the arrearages which accrued during the first 10 months of 1984.

In January, 1986, the father made a single $600 payment, sufficient to cover, without interest, the payments due from September, 1985 through January, 1986. The father made no payments after January, 1986, except for approximately $300 the mother recovered through garnishing the father's wages.

However, the record is not sufficiently clear for us to determine the total amount possibly due. We lack the trial court's assessments of how much credit the father was to receive for payments made directly to the mother and Sheryl, and how that credit was to be applied. Moreover, the trial court did not address the amounts the mother recovered through wage assignments after 1986. These and other deficiencies prevent us from determining an accurate and, in turn, a fair judgment.

■ Therefore, we must remand this cause to the trial court to determine the arrearage, if any, which accrued from December 31, 1983 to the date the youngest child of the parties was emancipated, to declare the amount of those arrearages, and to enter an appropriate judgment. The trial court must make its determinations in accord with our holdings here and also in accord with the general rule that an obligor may not credit voluntary overpayments of child support against amounts due in the future. *Finley v. Morrow*, 697 S.W.2d 543, 544 (Mo.App.1985); *In re Marriage of Simmons*, 636 S.W.2d 351, 352–53 (Mo.App. 1982).

■ To aid the trial court further in its determinations on remand, we hold that the father owed the lump sum child support of $175 per month, the amount ordered in the dissolution decree, on and after the filing date of the mother's garnishment on January 6, 1986. The trial court correctly found a "waiver" of the $175 based on the mother's "agreement and acquiescence". But, such a "waiver" does not necessarily bind the mother forever. *E.g., Rodgers v. Rodgers*, 505 S.W.2d 138, 141 (Mo.App.1974). In this case the "agreement and acquiescence" ended when the mother filed her garnishment on January 6, 1986, claiming an arrearage of $3,705.

■ The garnishment constituted a denial by the mother of the agreement and a demand by her that the father pay the full amount due under the decree. Even though the mother did not prosecute it, her filing and service of the garnishment were sufficient notice to the father that her acquiescence had ended. For equitable reasons we decided a "waiver" did exist and, thus, do not honor the mother's demand for past due amounts. There are, however, no equitable considerations to support an extension of the "waiver" past the time she revoked her agreement and acquiescence.

The doctrine of "waiver," or, more appropriately, equitable estoppel, is invoked in order to prevent the father's being the victim of an injustice. *Grommet,* supra. Yet, at the time the mother filed her garnishment, the father was not current on even the lesser payments he owed under their agreement. The "waiver" was thus serving only to reduce the size of the debt that was accumulating as a result of the father's failure to pay child support. Equitable doctrines are invoked to prevent injustices, not to permit parties to retain undeserved windfalls. *Grommet, supra* at 751. Thus, the father's child support obligation accumulated at the rate called for in the dissolution decree on and after January 6, 1986.

### *Attorney's Fees*

The trial court denied the mother's motion for attorney fees incurred in processing the garnishment in the trial court. This denial was consistent with the court's denial of the mother's claim for back child support implicit in its grant of the father's motion to quash the garnishment. However, as we have now decided, there may be child support owed by the father, and, if so, the mother will have processed her garnishment action successfully. Under Section 452.355(2), R.S.Mo. (1989 Supp.), the court must order the obligor to pay a reasonable amount for attorney's fees if the court finds the obligor failed, without good cause, to comply with the terms of the decree or order concerning child support.

■ Appellate courts have the authority to determine the value of legal services and fix attorney's fees in appropriate cases in which the record is sufficiently developed. *Parker v. Bruner,* 692 S.W.2d 379, 383 (Mo.App.1985). On the record now before us, we decline to do so. On remand, the trial court should reconsider whether an award of attorney's fees to the mother is appropriate.

The mother also contends the trial court erred in denying her request "for attorney fees and costs expended on appeal [of] the court's order to quash." We lack jurisdiction to consider this issue.

In her notice of appeal filed on November 27, 1989, the mother stated her appeal was from the trial court's order entered on November 17, 1989. That order, of course, did not refer to the mother's motion for an award of attorney's fees on appeal, since that motion was not filed until November 22, 1989. The trial court's subsequent order entered on December 6, 1989, does deny the mother's request for attorney's fees on appeal, as one of the issues determined in that order. However, the mother's notice of appeal does not mention the trial court's December 6 order. The supplement mother filed to her notice of appeal refers to her pending motion for attorney's fees on appeal, but otherwise does not raise it as an issue on appeal. Rule 81.08(a) requires that the notice of appeal specify the order from which the appeal is taken. There is nothing in the record before us to show the mother made a good faith effort to comply with Rule 81.08(a) to invoke our jurisdiction over the December 6, 1989 order regarding attorney's fees on appeal. We, therefore, lack jurisdiction to consider it. *See, e.g. Green Hills Production Credit Assn. v. R & M Porter Farms Inc.,* 716 S.W.2d 296 (Mo.App.1986); *see also, Allison v. Sverdrup & Parcel & Assoc.,* 738 S.W.2d 440 (Mo.App.1987).

Accordingly, we reverse the judgment of the trial court and remand this cause to it for a determination, in accord with this opinion and on the present record, whether the father owes any unpaid child support and, in turn, whether the mother is entitled to attorney's fee for a successful prosecution of this garnishment action.

CRANDALL, P.J., and SIMON, J., concur.