**STATE of Missouri, ex rel. Mary HOWELL, Appellant–Respondent,**

v.

**Gerald HOWELL, Respondent–Appellant.**

**Nos. 17308, 17323.**

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 30, 1991.

Motion for Rehearing or Transfer to Supreme Court Denied Oct. 22, 1991.

Application to Transfer Denied
Dec. 17, 1991.

Curtis G. Hanrahan, Dept. of Social Serv., Div. of Child Support Enforcement, Jefferson City, for appellant-respondent.

David P. Evans, West Plains, for respondent-appellant.

PARRISH, Judge.

Appeal number 17308 is an appeal from an order of the trial court that quashed an administrative order of the Division of Child Support Enforcement directing Gerald Howell to pay $240 per month child support and an additional $120 per month toward child support arrearages of $14,045. The trial court further quashed an administrative order for Gerald's employer to withhold sums from Gerald's salary to pay those amounts. The orders to quash are reversed. Appeal number 17323 is an appeal from a determination by the trial court that an administrative order directing Gerald to pay child support was not barred due to an asserted unenforceability of child support provisions in an Illinois decree of dissolution of marriage that dissolved the

marriage of Gerald Howell and Mary Howell. That determination is affirmed.

Mary Howell and Gerald Howell were married January 24, 1967. That marriage was dissolved by the Circuit Court for the 19th Judicial Circuit in Lake County, Illinois, on November 10, 1982. The decree issued by the Illinois court ordered Gerald to pay child support to Mary in the amount of $400 per month, being $80 per month for each of five children.[1] Gerald moved to Missouri from Illinois following the dissolution of that marriage.

Prior to his marriage to Mary, Gerald was married to Marguerite. A decree dissolving Gerald's and Marguerite's marriage was entered November 14, 1966, in the Circuit Court for the 19th Judicial Circuit in Lake County, Illinois. On September 15, 1967, after Gerald and Mary were married, the Illinois court entered an order that "vacated and held for naught" the November 14, 1966, decree. Thereafter, on September 19, 1967, the Illinois court entered a subsequent decree dissolving the marriage of Gerald and Marguerite.

Mary filed a petition with the Illinois court on July 20, 1984, seeking the collection of child support from Gerald. Her petition was filed pursuant to the Uniform Reciprocal Enforcement of Support Act (URESA).[2] The responding court was the Circuit Court of Ozark County, Missouri. § 454.020(13), RSMo Supp.1984. The Circuit Court of Ozark County ordered Gerald to pay $100 per month beginning December 15, 1984.

On July 5, 1989, the Director of the Division of Child Support Enforcement (the director) issued an administrative order that directed Gerald to pay child support pursuant to the Illinois decree of dissolution of his and Mary's marriage. § 454.476, RSMo 1986. The order of the director was docketed in the office of the Circuit Clerk of Howell County, Missouri. An order was also directed to Gerald's employer requiring the employer to withhold and pay over to the Circuit Clerk of Howell County monthly sums from Gerald's pay. §§ 454.-490 and .505, RSMo 1986.

Gerald filed a "Motion to Quash Execution and Garnishment" by which he sought to "quash the administrative garnishment" and to "dismiss any and all proceedings." The trial court ordered "that the administrative order herein be forever quashed to the extent that it seeks to collect any sums otherwise accruing under the ... decree of the Circuit Court of Lake County, Illinois, from October 1984 until the present time, or hereafter."

In its order quashing the execution in part,[3] the trial court included fourteen pages of narration in the nature of findings related to the points raised by the parties in support of the garnishment and in opposition to it. Both Mary and Gerald appealed. Their appeals are based upon three issues included in the findings of the trial court. The issues upon which they appeal are directed to determinations by the trial court (1) that the URESA order from the Circuit Court of Ozark County may have modified the Illinois support decree that is part of the decree that dissolved the marriage of Mary and Gerald; (2) that Mary acquiesced in a reduction of child support payments and, therefore, she could not now rely on the amount that the decree of dissolution ordered paid; and (3) that the Illinois decree could be enforced notwithstanding that the dissolution of Gerald's prior marriage to Marguerite was not final when he

1. Two of the five children for whom the Illinois court had ordered Gerald to pay support were emancipated at the time the administrative order was issued. The administrative order was for payment of support for the three minor, unemancipated children.

2. The Uniform Reciprocal Enforcement of Support Act (URESA), as adopted by Missouri, is found at §§ 454.010 to .360, RSMo 1986. The applicable Missouri statutes at the time Mary initiated the Illinois action was RSMo 1978. Some procedural changes to the act became effective August 13, 1984. The sections that were changed or added appear in RSMo Supp. 1984.

3. The parties had agreed that Gerald was in arrears as to the amount the Circuit Court of Ozark County had ordered paid in the URESA action in the amount of $1,985.84. Gerald had consented for that amount to be encumbered. The trial court, therefore, denominated its order as "Final Order Quashing Execution in Part and Confirming in Part, for Distribution of Funds, and for Money Judgment."

and Mary were married and, in fact, was set aside subsequent to Gerald's marriage to Mary. Mary contests issues (1) and (2) in her appeal, number 17308. Gerald contests issue (3) in his cross-appeal, number 17323.

This review is governed by Rule 73.01(c). "The judgment will be sustained unless there is not substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Sutton v. Schwartz*, 808 S.W.2d 15, 17 (Mo.App.1991). In view of Gerald being the prevailing party before the trial court, the evidence and permissible inferences that may be drawn therefrom that are favorable to him are accepted as true. *Id.* Contradictory testimony is disregarded. *Id.*

The first issue presented is directed to a finding the trial court made in an interlocutory order it entered March 5, 1990, and included in the final order that is the subject of this appeal. The trial court found in its March 5, 1990, order "that the Illinois support order [that is part of the decree of dissolution of Mary's and Gerald's marriage] has been *modified* and superseded, and will not now authorize an execution for current support." (Emphasis by trial court.) And, in its final order, the trial court stated that it had considered, in its March 5, 1990, order, "Gerald's contention that the Illinois support decree was *modified* by a judgment of the Circuit Court of Ozark County, Missouri, on October 3, 1984, long prior to the entry of the administrative order herein." (Emphasis by trial court.) The final order then declares, "What was said there is ratified and confirmed to the extent not inconsistent herewith."

■ The trial court's statement that the Illinois decree was modified by the URESA judgment in the Circuit Court of Ozark County is erroneous. This question was addressed in *Morton v. Morton*, 798 S.W.2d 521, 522–23 (Mo.App.1990). What was said in *Morton* is apropos here.

The question presented is, does the granting of an amount of child support in a URESA action that is different from that ordered paid by a prior dissolution decree constitute a modification of the terms of the prior dissolution decree?

. . . .

Two statutes speak to this issue, §§ 454.105 and .280 [RSMo 1986]. Section 454.105 states:

Participation in any proceeding under section 454.010 to 454.360 does not confer jurisdiction upon any court over any of the parties thereto in any other proceedings.

Section 454.280 states:

No order of support issued by a court of this state when acting as a responding state shall supersede any other order of support but the amounts for a particular period paid pursuant to either order shall be credited against amounts accruing or accrued for the same period under both.

Here, the trial court relied on *In re Marriage of Stigall*, 756 S.W.2d 184 (Mo.App. 1988), to support its determination that the URESA action resulted in modification of the Illinois dissolution decree. *Stigall* is discussed at length in *Morton v. Morton*, *supra*, at 523–24. For the same reasons given in *Morton*, *Stigall* is not applicable to the facts of this case.[4] The Illinois decree was not modified by the Ozark County Circuit Court URESA judgment.

■ The second issue presented is directed to a determination by the trial court that Mary acquiesced in a reduction of child support and that she could not now rely on the amount stated in the Illinois decree. Mary contends that the trial court erred in so finding.

The trial court recited a variety of circumstances in determining that Mary acquiesced in Gerald's paying less child support than was ordered by the Illinois decree. Those recitations include: (1) after a URESA order was entered for less than

---

**4.** As was noted in *Morton, supra,* at 524, §§ 454.105 and .350 were not in effect at the time *Stigall* was decided. Also, the trial court in

this case did not have the discussion in *Morton* for guidance in that *Morton* was not decided until after the date of the trial court's ruling.

the amount of support ordered by the Illinois decree, Mary did not "ask that the Ozark County judgment be vacated, nor for new trial, nor did she take an appeal"; (2) Mary "sought *enforcement* of the [URESA] judgment by filing a Motion for Contempt" (emphasis by trial court); and (3) Mary "received and accepted all sums paid in satisfaction of the Ozark County judgment and did nothing inconsistent with the theory that it constituted a modification of the Illinois decree until she filed a second URESA action in Howell County in 1988." [5]

The trial court ultimately concluded:

In determining whether Mary's conduct in failing to pursue the Illinois support order for a period of nearly four years admits of another "reasonable explanation" besides waiver, the Court is necessarily required to speculate. Mary has given no evidence before this Court, nor has any attorney on her behalf offered argument explaining her long silence following the Ozark County proceeding. It would certainly seem that if Mary needed the additional support, disagreed with the finding that Gerald could afford no more than $100 per month, and believed the Illinois order was still vital[?], she would have taken some action between October 1984 and April 1988 besides seeking enforcement of the Ozark County judgment. She remained free to register the Illinois judgment in Missouri. She remained free to pursue administrative remedies. Most logically, she could have asked the court in Ozark County to vacate its order, to grant her a new trial, or at the very least to rule specifically on the question of the arrearages due her. Failing those avenues, she could have filed a notice of appeal. Payment of attorney fees would have been no barrier to any of these actions, since Mary was entitled to the cost-free services of prosecuting attorneys, State attorneys-general and administrative personnel. Further court actions, like her URESA proceeding in Ozark County, could even be filed without any cost deposit. When she finally did file a second URESA action, it was not pursued. The records of that cause do not clearly reflect what led to abandonment of proceedings, but it is certainly with a fair inference that Mary neglected to cooperate with local counsel.

The trial court found, "Mary in any event waived any further right to rely on the Illinois order by her acquiescence in, and longstanding election of benefits under, the unappealed Ozark County judgment according to its terms."

Missouri cases that discuss waiver by acquiescence base its application on there being an agreement with consideration, *De-Moranville v. Tetreault,* 654 S.W.2d 71, 72–73 (Mo. banc 1983); *Sanders v. Sanders,* 797 S.W.2d 874, 878–79 (Mo.App.1990); *Saeuberlich v. Saeuberlich,* 773 S.W.2d 170, 171 (Mo.App.1989); *Haynes v. Haynes,* 648 S.W.2d 895, 896 (Mo.App. 1983), or on the existence of facts or circumstances that warrant invocation of equitable consideration to avoid injustice, such as there having been a change of position based upon an express agreement, *State ex rel. Div. of Family Services v. Ruble,* 684 S.W.2d 949, 951 (Mo.App.1985).

There was no express agreement between Mary and Gerald for payment of a lesser amount of child support than directed by the Illinois decree. Nor is there evidence of an implied agreement. There was no reliance by Gerald, to his detriment, on any act or representation by Mary that a lesser amount of child support was acceptable. There is no substantial evidence that supports the trial court's finding of waiver by acquiescence. The trial court's finding of waiver by acquiescence is erroneous.

■ The remaining issue—the one raised by Gerald's appeal—contends that his marriage to Mary was invalid because of his prior marriage to Marguerite. He argues that there was no marriage to be dissolved by the Illinois decree; that "where no valid

5. There is nothing in this appeal related to a URESA action other than the one in which the Circuit Court of Ozark County was the responding court. What did or did not occur in a subsequent URESA action in Howell County is not germane to the issues involved in this appeal.

marriage exists, a court is powerless to grant a purported decree." For that reason Gerald concludes that any provision in the Illinois decree that awarded child support is of no effect—that there was no valid judgment.

In *In re Marriage of Sumners*, 645 S.W.2d 205 (Mo.App.1983), this court addressed a situation in which a person, not then divorced, married another. When the second marriage went awry, the spouse who was not divorced at the time of his second marriage sought to claim the second marriage invalid. This court refused to permit him to claim the second marriage was invalid in order to thereby "free himself from his obligations to his second spouse." *Id.* at 209. The principle imposed in *Sumners* was that "the person who produced the misleading situation cannot, as against persons who may (or may not) have thought the divorce to be valid, set up its invalidity when later that invalidity seems advantageous to him." *Id. quoting* Leflar, American Conflicts Law § 226 (1977). In further explanation, *Sumners* quoted, at 1.c. 210, *Spellens v. Spellens*, 49 Cal.2d 210, 317 P.2d 613, 618–19 (1957), as follows:

> "... The theory is that the marriage is not made valid by reason of the estoppel but that the estopped person may not take a position that the divorce or latter marriage was invalid.... 'To hold otherwise protects neither the welfare nor morals of society but, on the contrary, such holding [would be] a flagrant invitation to others to attempt to circumvent the law, cohabit in unlawful state, and when tired of such situation, apply to the courts for a release from the indicia of the marriage status' ... [and] [f]rom a pragmatic viewpoint, judicial invalidation of irregular foreign divorces and attendant remarriages ... is a [wholly ineffective] sanction against an institution whose charm lies in its immediate respectability...."

Gerald's point on appeal is denied.

The trial court's order quashing "execution" in part is reversed. The trial court's determination that the child support provisions of the Illinois decree that dissolved the marriage of Gerald Howell and Mary Howell are enforceable is affirmed. The administrative order and its accompanying order to withhold and pay over wages remain in effect.

PREWITT, P.J., and CROW, J., concur.