827 S.W.2d 772 (1992)
In re the MARRIAGE OF Jimmy Ray FRY and Sandra Ann Fry.
Jimmy Ray FRY, Respondent,
v.
Sandra Ann AINSWORTH (formerly Fry), Appellant.
No. 17695.
Missouri Court of Appeals, Southern District, Division One.
April 15, 1992.
*773 Brian P. Taylor, Taylor & Taylor, Neosho, for appellant.
No appearance, for respondent.
CROW, Judge.
On April 4, 1991, at the instance of Sandra Ann Ainsworth ("Sandra"), a garnishment was issued against the wages of her ex-husband, Jimmy Ray Fry ("Jim"), to collect allegedly delinquent child support which, with interest, totaled $8,157.40. Jim moved to quash the garnishment, averring that by reason of an agreement in October, 1981, the sum claimed by Sandra exceeded the amount due and Sandra's claim was barred "by the doctrine of waiver by acquiescence."
The trial court conducted an evidentiary hearing, and afterward entered an order quashing the garnishment as to the support allegedly due for the period from May 1, 1987, through January 31, 1991, the total of which, according to the court, was $7,555.38 including interest. The court left the garnishment undisturbed as to support due from and after February 1, 1991, the approximate date Jim received a letter from the Department of Social Services (described more fully infra).
Sandra appeals. Her sole point relied on is:
The trial court erred in quashing that part of garnishment ... in the sum of $7,555.38, in that, the trial court found that [Sandra] had "waived by acquiescence" her right to said child support, because the essential elements of "waiver by acquiescence", that the obligor changed his position, to his prejudice in reliance on a perceived agreement with the obligee and it would be unjust to allow the obligee to collect the full amount of ... child support is not present in this case.
The point requires a narrative of the pertinent facts. In recounting them, we observe the familiar axiom that where, as here, no party requests findings of fact and the trial court makes none, all fact issues shall be considered as having been found in accordance with the result reached. Rule 73.01(a)(2)[1]; McCullough v. Newton, 348 S.W.2d 138, 141-42[2] (Mo.1961); Ludlow v. Ahrens, 812 S.W.2d 245, 248[2] (Mo.App. 1991). We accept as true the evidence and inferences from it favorable to the result below and disregard contrary evidence, T.B.G. v. C.A.G., 772 S.W.2d 653, 654[2] (Mo. banc 1989), mindful that the trial court was free to believe or disbelieve all, part or none of the testimony of any witness. Id. at 654[1].
So viewed, the evidence establishes that the marriage of Sandra and Jim was dissolved by decree entered September 28, 1979. The decree awarded Sandra custody of the parties' two children: Jimmy Ray Fry ("Jimmy"), born August 11, 1969, and Jana Lynn Fry, born August 3, 1972. The decree ordered Jim to pay Sandra child support of $30 per week per child.
On August 31, 1981, the trial court entered an order modifying the child support provision in the dissolution decree, effective retroactively to July 17, 1981. Commencing that date, Jim was to pay Sandra lump-sum child support of $65 per week, rather than $30 per week per child.
By October, 1981, Jimmy had become difficult for Sandra to control, and he expressed the desire to live with Jim. Sandra and Jim agreed Jimmy could do so. They also agreed Jim would continue to pay Sandra $65 per week child support, but Sandra would pay Jim back $32.50, representing "Jimmy's half." According to Jim, the reason for this scheme was that the judge had *774 admonished them, "Do not mess with the child support."
Jimmy began residing with Jim. While this arrangement persisted, Jim paid Sandra $65 per week and she paid him $32.50 per week. After some five years, Jimmy returned to Sandra's residence. Jim continued paying Sandra $65 per week. Inferably, she ceased paying him $32.50 per week.
In March, 1987, Jimmy departed Sandra's residence, quit school, and "moved in with a girl." Jim thereupon began paying Sandra $32.50 per week instead of $65. The first $32.50 payment was March 20, 1987.
Jim testified Sandra accepted the $32.50 payments and never protested the reduction. He was still paying her $32.50 per week when he received a letter from the Department of Social Services around February 1, 1991. The letter was not presented as evidence in the trial court; however, it is inferable from the record that the letter advised Jim that Sandra was seeking "back child support" of $32.50 per week commencing the date Jim began paying $32.50 instead of $65 weekly (March 20, 1987).
At trial, Sandra testified she was seeking arrearages of $32.50 per week for only the period from and after May 1, 1987. She claimed nothing for the period when Jim was paying her $65 per week and she was reimbursing him $32.50 per week.
The trial court ruled:
... [Jim's] Motion to Quash Garnishment is hereby sustained, as and for all sums alleged to be due and owing ... from the period of time of May 1, 1987 through and including January 31, 1991, which sums are a total arrearage of Six Thousand One Hundred Forty-Two Dollars and Fifty Cents ..., and accumulated interest of One Thousand, Four Hundred Twelve Dollars and Eighty-Eight Cents.... Thus, for clarification, the Court does hereby sustain [Jim's] Motion to Quash, in the total sum of Seven Thousand, Five Hundred Fifty-Five Dollars and Thirty-Eight Cents....
That portion of [Jim's] Motion to Quash dealing with sums due and owing from and after February 1, 1991, through present is hereby overruled. The Court does order that [Jim's] total child support obligation to [Sandra], commencing February 1, 1991, after receipt of letter from Department of Social Services advising [Jim] that ... Sandra ... was seeking child support payments at the sum of Sixty-Five Dollars ... per month [sic], which letter is dated January 30, 1991, with [sic] sufficient notice to [Jim], that [Sandra] was no longer acquiescing in payment of less than the Court ordered amount and, therefore, there is no waiver by acquiescence as to sums due and owing from and after February 1, 1991.
In reaching this result, the trial court evidently relied on Sutton v. Schwartz, 808 S.W.2d 15 (Mo.App.1991). There, six years after the parties were divorced, their eldest child moved out of the home of the custodial parent (the mother). The parties agreed that the decreed child support ($175 per month lump-sum) would be reduced to $120 per month. The mother accepted that amount for the ensuing seven years, then undertook to collect the difference between the decreed amount and the agreed amount. The trial court held the mother waived the decreed amount by agreeing to and acquiescing in the lesser amount for seven years. Id. at 18.
On appeal by the mother, the Eastern District of this Court acknowledged that an out-of-court agreement to change prospectively the amount of support due under a dissolution decree is unenforceable, and that parties wishing to make such an agreement enforceable must petition the court to change the terms of the decree. Id. at 18[1]. On the other hand, explained the opinion, past due payments of support constitute a debt which the obligee can compromise by an agreement supported by adequate consideration. Id. at 18[2].
Sutton further declared that circumstances may exist where a court may refuse to award the obligee the full amount of support due even absent a court-ordered *775 modification or an agreement to compromise past due amounts. Id. at 18[3]. Such refusal may occur when it would be unjust to permit the obligee to collect the full amount due. Id. The refusal is based upon a concept labeled "waiver by acquiescence," which is actually an application of the doctrine of equitable estoppel. Id. Citing Grommet v. Grommet, 714 S.W.2d 747 (Mo.App.1986), Sutton stated waiver by acquiescence may be found where the obligor changes his position to his detriment in reliance on a perceived agreement with the obligee. 808 S.W.2d at 19[4].
In Sutton, the trial court found the father paid "substantial excess amounts" of support during three of the seven years allegedly covered by the out-of-court agreement. These sums were paid directly to the mother and to one of the children, with the mother's consent, and were sufficient to offset the arrearage the mother claimed for that period. Id. at 19. Consequently, reasoned the appellate court, it would be unjust to allow the mother to collect all that was due under the decree, as it is reasonable to assume the father would have taken steps to have the excess amounts credited against his support arrearages had he known the mother planned to demand payment of the full decretal amount. Id. Because it would be unjust under the circumstances to hold the father liable for the full amount, Sutton held the trial court did not err when it found waiver by agreement and acquiescence. Id.
The factors on which Sutton hinged are not present in the instant case. In saying this, we have not ignored Jim's testimony that from 1987 until time of trial (June 4, 1991), he gave Jana (the parties' younger child) money "outside of the child support payments" and paid for things for her. However, viewing Jim's testimony most favorably to him, these expenditures totaled only $492. Furthermore, Jana testified she was supposed to pay Jim back for some items, and she had repaid "[m]ost of it."
We have also noted Jim's testimony that had he thought he still owed Sandra $65 per week after Jimmy departed her residence in 1987, he would have "been back in court for modification." Although Jim has filed no brief with us, we infer he presented this testimony to the trial court in an effort to demonstrate he had changed his position to his detriment by refraining from filing a motion to modify the child support from and after March 20, 1987, when he reduced the payments to $32.50 per week.
Again, viewing the evidence most favorably to Jim, the most that was proven was that he told Sandra he was cutting the child support to $32.50 per week, and she accepted payments in that amount without dispute. There was no evidence Sandra agreed $32.50 per week was all the child support she was owed or that she agreed to demand no more.
The following passage from Grommet, 714 S.W.2d at 751, applies here:
[This] was not a negotiated agreement in which both parties gave something of value; [the father] gave nothing.... Delay alone does not preclude the demand for full payment.... [The father] argues that waiver does not require consideration.... This argument misses the point. The concept called waiver by acquiescence is an equitable doctrine. We look, therefore, for some indicia of injustice such as a change in [the father's] position induced by a misconception of the [mother's] intent or the status of his court decreed obligation. No such misconception or reliance exists here. It was not he who was induced into a change of position, it was the [mother]. [The father] seeks to invoke equitable principles not to protect himself from injustice, but to retain an undeserved windfall. Under the circumstances, invocation of equity is entirely inappropriate.
The scope of our review in this judge-tried case is set forth in Rule 73.01(c) as construed by Murphy v. Carron, 536 S.W.2d 30 (Mo. banc 1976). The judgment of the trial court will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. Id. at 32[1]. Under this standard, considerable deference is accorded judgments *776 turning on evidentiary and factual evaluations by the trial court. Rouggly v. Whitman, 592 S.W.2d 516, 519[1] (Mo.App. 1979). However, no such deference obtains when the law has been erroneously declared or applied. Taylor v. City of Pagedale, 746 S.W.2d 576, 577-78[3] (Mo.App. 1987); Rouggly, 592 S.W.2d at 519[1]; In re Marriage of Galloway, 547 S.W.2d 193, 196[4] (Mo.App.1977).
A father may not take it upon himself to reduce a lump-sum child support amount which is for the support of more than one child upon emancipation of one of the children. Holt v. Holt, 662 S.W.2d 578, 580[1] (Mo.App.1983). Accord: Sutton, 808 S.W.2d at 21[12]. Standing alone, delay in demanding payment of child support or acceptance of a sum less than that owed does not preclude a claim for the full amount owed. Holt, 662 S.W.2d at 580[4]; Vincent v. Vincent, 584 S.W.2d 152, 153[1] (Mo.App.1979).
We hold the trial court erred as a matter of law in applying the doctrine of waiver by acquiescence to the child support accruing between May 1, 1987, and January 31, 1991. Inasmuch as Jim presented no other basis to the trial court for quashing the garnishment, the portion of the trial court's order quashing the garnishment for child support arrearages for that period must be reversed.
The portion of the trial court's order leaving the garnishment intact as to child support accruing from and after February 1, 1991, is affirmed. The portion of the trial court's order quashing the garnishment as to child support accruing from May 1, 1987, through January 31, 1991, is reversed, and the cause is remanded to the trial court with directions to enter a new order adjudicating Jim's motion to quash the garnishment in accordance with this opinion.
PREWITT, P.J., and PARRISH, J., concur.
NOTES
[1] Rule references are to Missouri Rules of Civil Procedure (1992).