STATE of Missouri ex rel., DIVISION
OF FAMILY SERVICES and
Patricia Blair, Appellants,

v.

Vernon ISADORE, Respondent.

No. WD 49037.

Missouri Court of Appeals,
Western District.

Feb. 28, 1995.

Don Cowan, Kansas City, for appellants.

Elister H. Dewberry, Kansas City, for respondent.

Before SPINDEN, P.J., and LOWENSTEIN and ELLIS, JJ.

ELLIS, Judge.

The Missouri Division of Family Services ("DFS") appeals from an order entered by the Circuit Court of Jackson County granting Vernon Isadore an equitable credit of $2,350 against a child support arrearage owed to DFS. We affirm.

On March 12, 1991, Isadore executed a paternity statement and agreement in which he acknowledged that he was the father of three children, namely, L.B., born January 24, 1974, V.B., born November 22, 1975 and R.B., born December 19, 1977. Pursuant thereto, on March 13, 1991, the Director of the Missouri Division of Child Support Enforcement entered a judgment and order of paternity declaring Isadore the father of the three children pursuant to § 454.485, RSMo Supp.1990.[1] On March 21, 1991, the judgment and order of paternity was filed in the office of the Jackson County Circuit Clerk, was entered in the judgment docket, and thereby had the effect of a "docketed order or decree of the circuit court." § 454.490. Thereafter, an administrative hearing was held on August 22, 1991 to determine whether Isadore should be ordered to pay support and provide medical insurance for the children pursuant to § 454.475. A decision and order was entered on September 16, 1991 directing Isadore to pay $283 per month as child support for the three children. In addition, it found that Patricia Blair was the mother of the children and that they were in her custody. This decision and order was filed in the office of the Jackson County Circuit Clerk on September 23, 1991. As a result of the hearing officer's decision, on September 16, 1991, the Director of the Division of Child Support Enforcement issued an order to Isadore's employer directing that $283 be withheld from his wages each month pursuant to § 454.505, RSMo Supp.1990.

On March 1, 1993, Isadore filed a motion in the Circuit Court of Jackson County to modify child support and for equitable credit against child support due. Patricia Blair and DFS were both served but Patricia Blair did not enter an appearance or file a pleading. On November 2, 1993, a hearing was held in the circuit court on Isadore's motion. Patri-

1. Unless otherwise noted, all statutory citations are to RSMo 1986.

cia Blair was subpoenaed to appear at the trial but failed to do so. After hearing evidence on the issue of an equitable credit, the trial court took the issue under advisement and provided the parties an opportunity to file suggestions. In addition, pursuant to agreement of the parties, the trial court entered an order on November 3, 1993 declaring L.B. emancipated and that no further child support be paid for her; finding that R.B. was living with Isadore and no further child support was owed for him; and modifying the prior order to provide $154 per month as child support for V.B. After the parties submitted suggestions, the court entered a further order on January 3, 1994 granting Isadore a credit of $2,350 against his arrearage to DFS.[2] It is from this order that DFS appeals.

Appellate review of this court-tried case is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We must affirm the judgment of the trial court "unless there is no substantial evidence to support it, or it is against the weight of the evidence or it erroneously declares or misapplies the law." *Brownstein v. Rhomberg–Haglin & Assoc., Inc.*, 824 S.W.2d 13, 15 (Mo. banc 1992). "Credibility of witnesses and the weight to be given their testimony is for the trial court, which is free to believe none, part or all of the testimony of any witness. We assume the trial court believed the testimony and evidence consistent with its judgment, consequently, we accept as true the evidence and permissible inferences which may be drawn favorable to the prevailing party, and disregard the contradictory testimony." *Snowden v. Gaynor*, 710 S.W.2d 481, 483 (Mo.App. 1986) (citations omitted).

Viewed in this light, it appears Isadore is a seasonal worker who works approximately eight months during the year. In 1992, his gross income was $9,087. At about the time of the child support order on September 16, 1991, R.B., the youngest child, came to live with Isadore. R.B. had previously been at Hill Top, a "correctional" institution for young men. Isadore had visited R.B. from time to time while he was residing at Hill Top. As the time for R.B.'s discharge approached, the authorities concluded his mother's home was not a proper setting for him and evaluated Isadore's situation. R.B. was eventually "furloughed" to Isadore for one year. After that time, R.B. was permanently placed with Isadore, apparently through the juvenile court. R.B. continuously resided with Isadore through the time of trial.

As noted previously, the child support order was a total sum of $283 per month for all three children. Isadore continued to pay the full amount through the time of trial. However, from September, 1991 to the trial date, he paid for R.B.'s food, clothing, housing and recreation in addition to those payments. DFS admitted it knew R.B. was not living with Patricia Blair as early as October 10, 1991. And, Patricia Blair knew R.B. was living with Isadore and made no effort whatsoever to regain custody. Indeed, R.B. visited his mother from time to time while living with Isadore.

DFS presents four points on appeal. First, it contends the trial court erred in granting the equitable credit because Isadore provided the support in a manner other than as ordered. Second, DFS asserts the granting of the credit was against the weight of the evidence. Third, it argues the trial court erred by calculating the credit on a *pro rata* basis. Finally, DFS says the trial court erred in granting an "abatement of support pursuant to 452.340.2" because the judgment was against the weight of the evidence.

■ In Point I, DFS asserts that the trial court erred in awarding the credit because

---

2. DFS was providing AFDC benefits to Patricia Blair on behalf of the three children from the time of the child support order on September 16, 1991 until the time of trial. The benefits paid to her were greater than the child support amounts being paid by Isadore and therefore he had an obligation to DFS for the additional amount. It is clear from the record that DFS and Isadore agreed on the amount of the arrearage. However, because of possible typographical errors, misstatements and/or less than clear photocopies in the Legal File, we are uncertain of the exact amount. It appears that the sum is between $2,510 and $2,850.

the additional support provided by Isadore was "in kind" rather than amounts paid to the mother. It cites *Royall v. Legislation & Policy Div., Bureau of Retirement Ins. & Occupational Health,* 610 S.W.2d 377 (Mo. App.1980), for the general proposition that, generally, no credit is allowed for child support paid other than as ordered by the court. It then reasons that to the extent Isadore supported R.B. for 25 months while R.B. lived in Isadore's home, Isadore deviated from the manner of payment ordered. The argument is without merit. DFS fails to note the following language in *Royall,* which immediately follows statement of the general rule. "Equitable exceptions to this rule allow the father credit for direct support provided to the children under the compulsion of their circumstances or with the express or implied consent of their mother." 610 S.W.2d at 380. In this case, Isadore had custody of R.B. under the "compulsion of [R.B.'s] circumstances," that being release from Hill Top and placement with Isadore. Furthermore, under the circumstances present here, Patricia Blair, R.B.'s mother, at least impliedly consented to Isadore providing the "in kind" support. Point denied.

■ Next, DFS contends awarding the credit was against the weight of the evidence. It asserts that Isadore didn't place in evidence a court order giving him custody, there was no evidence that DFS consented to the manner in which support was provided, and there was no evidence Isadore relied to his detriment on an agreement or perceived agreement. This point can be dealt with summarily. The evidence, and all reasonable inferences derived therefrom, viewed in the light most favorable to the trial court's ruling, and disregarding all contrary evidence, is that R.B. was placed with Isadore upon R.B.'s release from Hill Top. True, Isadore did not offer a court order into evidence, but he was not required to do so. There was no contrary evidence and the court believed, as it had the right to do, Isadore's testimony on the issue. *Snowden,* 710 S.W.2d at 483.

■ DFS then says there was no evidence that either it or Patricia Blair consented to the manner in which the additional support was provided. As indicated earlier, Blair, at least impliedly, consented because she knew R.B. was with Isadore and made no effort to regain custody or provide support. Likewise, while DFS knew as early as October 10, 1991 that R.B. was not living with Blair, it apparently made no effort to find out where he was or who was supporting him. Under those circumstances, it impliedly consented, or acquiesced, to Isadore's additional "in kind" support. Since both DFS and Blair impliedly consented to or acquiesced in R.B. living with Isadore and being supported by him, they waived any complaint about the lack of an express agreement. Waiver by acquiescence arises where some fact or circumstance warrants the invocation of equitable considerations in order to avoid injustice. *Grommet v. Grommet,* 714 S.W.2d 747, 751 (Mo.App.1986). While a mere express or implied agreement, in and of itself, may be insufficient to justify such a waiver, *id.,* in this case, the implied agreement conjoined with placement of the child with Isadore by juvenile authorities permits its application. The circumstances here clearly warrant invocation of equitable considerations. Point denied.

■ In calculating the amount of credit to be given to Isadore, the trial court did so by using one-third ·of the child support amount, $94, multiplied by 25 months. In its third point, DFS claims this was error. It cites *Holt v. Holt,* 662 S.W.2d 578 (Mo.App.1983), as authority for the proposition that an obligor is not permitted to reduce the amount of child support owed *pro rata* without court approval. However, *Holt* is inapposite since it did not concern an equitable credit awarded by the trial court. This case is more akin to *Sutton v. Schwartz,* 808 S.W.2d 15 (Mo. App.1991), where the court stated:

> *Holt* does not control. The rule applied in *Holt* is a rule of construction of dissolution decrees. The trial court here was not construing a decree. ... [but] was applying the rules of equity to fashion a just remedy.

The trial court's action was a reasonable exercise of its discretion. Having found

the father was due some credit for the money paid directly to Sheryl, the court simply used the *pro rata* amount of support as a guide for determining and limiting the amount to be credited.

\*     \*     \*     \*     \*     \*

The father testified he provided direct support to Greg in the form of food, living quarters and cash during this period. The trial court could properly take note of this and use the *pro rata* amount as a guide for limiting the credit it would award the father. Under these circumstances, it was not necessarily improper for the trial court to use the *pro rata* amount of child support as a guide for determining how to balance the equities.

*Id.* at 21. In the case at bar, the trial court properly used the *pro rata* amount of support as a guide for determining the credit. Point denied.

■ Finally, in Point IV, DFS argues the trial court erred in granting an abatement of child support pursuant to § 452.340.2, RSMo Supp.1990. This point is totally devoid of merit. There is no indication whatsoever that the trial court was abating child support pursuant to that statute. Rather, count II of the motion to modify sought an "equitable credit" against the arrearage. The order entered by the trial court notes that Isadore is seeking an "equitable credit" and "agree[s] ... that he should be given credit...." The trial court was applying equitable principles to fashion a remedy. Point denied.

The judgment of the trial court is affirmed.

All concur.