**In re the MARRIAGE OF Carolyn Kay STIGALL, Appellant,**

**and**

**Dallas Wayne Stigall, Respondent.**

No. 15071.

Missouri Court of Appeals,
Southern District,
Division One.

June 30, 1988.

Motion for Rehearing or to Transfer to Supreme Court Denied Sept. 2, 1988.

John Alpers, Jr., Cabool, for appellant.

Daniel P. Wade, Wade & Haden, Ava, M. Sean McGinnis, Turner, Reid, Duncan, Loomer & Patton, P.C., Springfield, for respondent.

GREENE, Presiding Judge.

Carolyn Kay Stigall (Kay) appeals from the trial court's order modifying the child support provisions of a prior dissolution decree, which order set child support for Cynthia Stigall, a minor child of Kay and her former husband, Dallas Wayne Stigall (Dallas), in the sum of $166.66 a month, and which decreed that there was no arrearage for back child support.

In her brief filed here, Kay does not question the child support award made on behalf of Cynthia, but does contest the trial court's ruling on the arrearage question, contending that, by virtue of the terms of the dissolution decree, Dallas owes her $9,295 for back child support. We affirm.

Facts relevant to the disposition of this appeal are as follows. Kay and Dallas were married in 1963. Two children were born of the marriage—a son, Jeffrey, born March 28, 1966, and a daughter, Cynthia, born May 30, 1968. The marriage of the parties was dissolved in the Circuit Court of Wright County, Missouri, on July 31, 1975. In the decree, Kay was awarded custody of the two children, and Dallas was ordered to pay Kay the sum of $250 a month for the support of the two children.

On March 11, 1980, Kay filed a petition in the Circuit Court of Wright County alleging that she was the wife of Dallas, which was not true, that she was the mother and Dallas was the father of Jeffrey and Cynthia, and that Dallas, since April of 1979, had "refused and neglected to provide fair and reasonable support for petitioner and the other dependent(s)." The petition was styled "PETITION FOR SUPPORT UNDER UNIFORM SUPPORT OF DEPENDENTS LAW," and listed Dallas' current address as Route 1, Cabool, Missouri. The relief prayed for was a support order directed to Dallas "as shall be deemed to be fair and reasonable...." No mention was made in the petition of the prior dissolution decree and child support award.

The matter was set for hearing on May 1, 1980, at which time Kay and Dallas appeared in court before the same judge who had entered the dissolution decree. The prosecuting attorney of Wright County, who was representing Kay's interest, announced to the court: "The parties have agreed that Mr. Stigall would pay, begin paying immediately, $150.00 per month, total, or $75.00 per month per child, to Mrs. Stigall as current child support obligation." After the attorney for Dallas confirmed the

agreement, the trial judge stated: "It's stipulated and agreed that the respondent shall pay child support in the sum of $75.00 per child per month, and stipulation approved." The parties further stipulated that Dallas was in arrears in the sum of $2,000 on his previously court ordered child support obligation. The trial court ordered Dallas to pay child support in the sum of $75 per month in accordance with the terms of the stipulation, and directed that a hearing be held to determine a method of paying the past due support obligation. On July 3, 1980, the trial court, after hearing evidence, ordered Dallas to pay a lump sum of $150 toward the arrearage, determined the arrearage would then be $1,850, and ordered Dallas to pay that amount at the rate of $25 a month, which, together with the child support payment totalling $150 a month, amounted to $175 a month that Dallas was to pay Kay.

On March 12, 1986, Dallas filed a motion to modify the dissolution decree. He alleged that in the original decree he was obligated to pay a total of $250 a month as child support, and that such sum was "reduced to $150.00 per month total in June, 1980." As a change in circumstances justifying modification, the motion stated that Jeffrey was emancipated and no longer required support. The motion also stated that Kay had assigned her right to receive child support from Dallas to the Missouri Division of Family Services, and that there was "a dispute as to what the arrearage owed by Movant amounts to...." In the prayer of his petition, Dallas requested that the decree be modified by abating the child support award for Jeffrey, and that the trial court determine what amount of back child support Dallas owed, after crediting him with all monies he paid after Jeffrey became emancipated.

In her answer, Kay admitted the marriage had been dissolved and that the dissolution decree ordered Dallas to pay her the sum of $250 a month as child support, and denied all other allegations of the motion. The prayer of her answer requested dismissal of the motion filed by Dallas, and an allowance of attorney fees. Kay also filed a cross-motion to modify in which she sought an increase in the amount of child support, citing as a change in circumstances an increase in the cost of supporting the children, including expenses of Cynthia in attending college. The prayer in her motion was for an increase in the amount of child support to be paid by Dallas. She made no claim in her motion that Dallas owed any back child support.

On October 30, 1986, the trial court, after hearing evidence, made a judgment entry, the pertinent parts of which read as follows:

1) That the child, Jeffrey Stigall, is not in school and is working full time and under the facts heard by this Court is emancipated.

2) That the child, Jeffrey Stigall, lived with his father from October 1, 1985 through February of 1986 and this action was filed in March, 1986.

3) The Movant/Father owed back child support of $1,850 as of May 1, 1980 and future child support of $150 each month.

4) The child support owed by Movant/Father since May of 1980 is: 65 months for Jeffrey @ $75 per month = $4,875; plus 77 months for Cynthia @ $75 per month = $5,775; plus the arrearage of $1,850 for a total of $12,500 through October, 1986.

5) The Movant/Father has paid from May 1980 through October, 1986 the sum of $12,630.

6) That Movant/Father has overpaid his child support in the sum of $130 and is credited that amount towards future child support owed.

7) That there is no arrearage owed by Movant/Father and the intercept of Movant/Father's federal and state taxes should immediately cease.

8) That the minor daughter, Cynthia, is enrolled in college and the Respondent/Mother is entitled to child support in the sum of $2,000 per year payable in 12 monthly installments of $166.66 per month.

9) That Respondent/Mother is entitled to a judgment for $400 on attorney fees.

It is so ordered.

Kay appealed from that judgment, contending the trial court erred in finding that the May 1, 1980, child support order was a modification of the original dissolution decree of July 31, 1975, because (1) the May 1, 1980, judgment was not based upon a motion to modify, (2) there was no notice to the parties that the May 1, 1980, proceeding was, in fact, a modification hearing, and (3) there was not sufficient evidence introduced at the May 1, 1980, hearing to allow the court to modify the decree. In support of these assertions, Kay cites § 452.370.1,[1] § 454.280, *Ray v. Ray*, 247 Ga. 467, 277 S.E.2d 495 (1981), *In re Marriage of Popenhager*, 99 Cal.App.3d 514, 160 Cal.Rptr. 379 (1979), and *Trice v. Trice*, 428 So.2d 1265 (La.App. 3 Cir.1983). Section 452.370.1 provides that, except as otherwise provided in section § 452.325.6, the provisions of any decree respecting maintenance or support may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms of the present decree unreasonable. Section 452.325.6 provides, by implication, that modification of a maintenance agreement contained in a decree may be precluded or limited by the terms of the decree, if a separation agreement of the parties so provides, but such is not the case where the terms of the agreement concern support, custody, or visitation of children. Section 454.280 is contained in the codified body of Missouri law called the Uniform Reciprocal Enforcement of Support Law. It provides that "[n]o order of support issued by a court of this state *when acting as a responding state* shall supersede any other order of support but the amounts for a particular period paid pursuant to either order shall be credited against amounts accruing or accrued for the same period under both." (Emphasis added.) The three cases cited, which are from foreign jurisdictions, all reiterate the principle expressed in § 454.280 that orders of support in cases properly brought under the Uniform Reciprocal Enforcement of Support Act (URESA) do not, of and by themselves, constitute modification of the support provisions of a prior dissolution decree.

Kay contends that the May 1, 1980, order was a support order in a URESA proceeding and, therefore, it did not supersede the support order in the dissolution decree. She reasons that even though there was proof that Dallas had paid the $75 per child per month, or a total of $150 a month, during the time period in question, he still owed her an additional $100 a month during that period, which sum was the difference between what Dallas paid and what the dissolution decree provided for him to pay.

At the time the trial judge, in the motion to modify action, announced to the parties what his decision in the case was going to be, he indicated that he took the May 1, 1980, order to mean that Kay and Dallas had agreed to reduce the child support to $150 a month, that such agreement had been approved by the trial court, and that Kay, by accepting such amount for a period of six years without making any attempt to claim Dallas owed her any more money, waived her right to later complain. We believe that such conclusions by the judge were justified by the evidence and the law.

■ We have no quarrel with the purpose and intent of URESA, which is a uniform law used primarily to force fathers living in a state or county different from that of their children to support those children under threat of being jailed for contempt of court if they do not obey court orders directing them to do so. The act, and the procedures utilized in applying it, can be used whether or not a dissolution decree containing child support provisions has been entered in the case. URESA proceedings are independent of any prior proceeding in which child support was awarded, and a person seeking relief may seek to enforce a child support claim by invoking the remedies available under the reciprocal act, or through execution or garnishment based on the provisions of the dissolution decree. *Olson v. Olson*, 534 S.W.2d 526, 529–31 (Mo.App.1976). This does not mean, however, that the issue of modification of child support provisions of a prior

---

1. Revised Statutes of Missouri, RSMo 1986.

dissolution decree cannot be addressed in a URESA proceeding.

While no Missouri case addresses the question, it was addressed in the case of *In re Marriage of Popenhager*, 160 Cal. Rptr. at 382–83, where it was held that the modification issue could be addressed in a reciprocal proceeding where both parties were before the court, and the issue had been raised and recognized by the parties. Such was the case here. The testimony of both Kay and Dallas given at the hearing indicated that all Dallas could possibly pay as child support was $75 a month per child or a total of $150 a month, that Kay understood that fact and was willing to accept that amount plus a $25 per month payment on the arrearage, as satisfaction of Dallas' obligation to pay child support. When you couple this with the fact that Kay made no protest to this arrangement, and accepted the payments for a six-year period without making any claim that Dallas owed her additional money for back child support, the conclusion is inescapable that Kay waived any claim that she might have had by virtue of the terms of the dissolution decree.

Peaceful settlements of controversies are to be encouraged by allowing parties to a dispute to equitably settle their differences. *Rapp v. Rapp*, 619 S.W.2d 788, 790 (Mo.App.1981). A number of Missouri cases have held that agreements as to a reduced amount of child support, supported by consideration, which in this case was the compromise of a disputed issue (the amount of back support owed), when acquiesced in by the custodial parent's acceptance over an extended period of time without pursuing legal remedies, create an estoppel to any claim to a greater amount as is specified in a prior support order. *Dablemont v. McMinn*, 691 S.W.2d 490, 491 (Mo.App.1985); *State ex rel. Div. of Family Serv. v. Ruble*, 684 S.W.2d 949, 951 (Mo.App.1985); *Haynes v. Haynes*, 648 S.W.2d 895, 896 (Mo.App.1983); *Rodgers v. Rodgers*, 505 S.W.2d 138, 145 (Mo.App. 1974); and *Maxey v. Maxey*, 212 S.W.2d 810, 812 (Mo.App.1948).

Even if we were to hold that the court order of May 1, 1980, which set $75 per month per child as "current child support obligation" was not a modification of the original decree, the principle of acquiescence would apply, and the complained of judgment would still be waived.

The judgment of the trial court is affirmed.

MAUS, J., concurs.

CROW, C.J., concurs and files concurring opinion.

CROW, Chief Judge, concurring.

I concur in the principal opinion, and write only to emphasize that our holding should be strictly limited to the unique facts before us. A custodial parent already possessing a child support order who seeks to collect support by a URESA proceeding should not have to assume a risk that the existing support order will be modified by any order entered in the URESA proceeding. Absent the stipulation in open court at the hearing May 1, 1980, which appears to have been understood by the parties, counsel, and the trial court as a modification of the child support obligation imposed upon Dallas by the dissolution decree, I would hold that the child support order in the dissolution decree remained undisturbed by the so-called URESA proceeding.