Teddy B. OGDEN, Appellant,

v.

Michael HENRY, Director, Division
of Child Support Enforcement,
Respondent.

No. WD 47236.

Missouri Court of Appeals,
Western District.

March 22, 1994.

John E. Downs, Pope, Nichols & Hicks, St. Joseph, for appellant.

Don L. Cowan, Mo. Dept. of Social Services, Div. of Child Support Enforcement, Kansas City, for respondent.

Before BERREY, P.J., and BRECKENRIDGE and SMART, JJ.

BRECKENRIDGE, Judge.

Teddy B. Ogden appeals the judgment of the trial court affirming the decision of the hearing officer of the Department of Social Services, Division of Child Support Enforcement, who found that Mr. Ogden owed a child support arrearage in the sum of $20,-380. Mr. Ogden raises three points on appeal, contending that the trial court erred in affirming the hearing officer's decision (1) because Brenda K. Ogden O'Brien acquiesced in receiving support payments of $20.00 per week per child; (2) because there was no evidence presented in the form of a sworn statement by Ms. O'Brien or a statement from the court certifying the amount of arrearage as required by § 454.475, RSMo 1986 [1]; and (3) because the Division of Child Support Enforcement did not follow its own rules. The judgment of the trial court sustaining the decision of the hearing officer is affirmed.

The marriage of Teddy B. Ogden and Brenda K. Ogden O'Brien was dissolved by the Circuit Court of Buchanan County, Missouri, on February 27, 1974. Pursuant to the provisions of the dissolution decree, Ms. O'Brien was granted custody of the four children of the marriage: Stacy, born April 30, 1964; Robert, born January 29, 1966; Teddy Joe (Jody), born October 13, 1968; and Candace, born August 3, 1970. The trial court ordered Mr. Ogden to pay to Ms. O'Brien "the sum of Eighty Dollars ($80.00) per week as and for support and maintenance for said children" commencing with the date of the decree. The decree directed that the weekly payments continue "until the further order of this Court."

On February 3, 1975, Ms. O'Brien filed in the Circuit Court of Buchanan County a verified petition for support under the Uniform Reciprocal Enforcement of Support Act (URESA).[2] In her petition, Ms. O'Brien stated that "Plaintiff, to properly support dependents ..., will require the sum of $20.00 per week for each of said dependents named for support until said dependent reaches majority."[3] The petition made no

---

1. All statutory citations are to Revised Missouri Statutes 1986, unless otherwise indicated.

2. The Uniform Reciprocal Enforcement of Support Act (Law), commonly referred to as either "URESA" or "URESL," provides a procedure by which a state can obtain support for a dependent

party from a parent or spouse who is no longer within the jurisdiction of the state. 2 Mo.Family Law, § 24.1 (Mo.Bar 4th ed. 1988).

3. The hearing officer indicated in her decision that the characters "$20.00" and "week" were inserted in handwriting on what appeared to be a form pleading.

reference to the original decree of dissolution and, in fact, attested that the marriage between Mr. Ogden and Ms. O'Brien "ha[d] not resulted in a divorce."

The URESA petition, an affidavit and a certificate of the judge were forwarded to the District Court of Gray County, Texas, the county of Mr. Ogden's residence. Sometime after the filing of the petition and before the hearing on the petition, Ms. O'Brien filed a motion for support in the proceeding in the Texas court. In the motion, Ms. O'Brien asked the court to grant her support of $125 per month for each child. Mr. Ogden noted in his brief on appeal that this motion was not taken up, sustained, or denied by the court.

A hearing was held on Ms. O'Brien's URESA petition on March 28, 1975, in the Gray County District Court. Ms. O'Brien appeared not in person, but by the Gray County attorney. Mr. Ogden appeared in person. The Texas court noted that "[t]he parties announced that all matters of controversy had been settled and the Court finds that said settlement is in all things fair and equitable." The Texas court found that Mr. Ogden's child support arrearage amounted to $1,200.[1] The court found further that the sum of "$20.00 per week per child" was a reasonable amount of support for Mr. Ogden to pay and made the following order:

IT IS FURTHER ORDERED that [t]he Defendant pay through the Clerk of this Court the sum of $20.00 per week per child with the first payment being due and payable on Tuesday, April 1, 1975, and a like amount on or before each Tuesday thereafter until further order of this Court, or until the child for whom payment is being made dies, marries or becomes 18 years of age.

Mr. Ogden reduced the amount of child support he was paying by $20.00 per week when Stacy married on or about February 23, 1980. After he notified the Texas court of the date that Robert would reach the age of eighteen, Mr. Ogden received a letter from the district clerk of Grey County, Texas.

The letter stated that, "You owe child support on the child who reaches 18 for the full month of February, 1984, thereafter your support will reduce $20.00 per week." When Robert graduated from high school and reached the age of eighteen, Mr. Ogden reduced his child support payment by another $20.00 per week. When Teddy Joe reached the age of eighteen, Mr. Ogden again reduced the amount of child support he paid by $20.00 per week.

Ms. O'Brien applied to the Missouri Department of Social Services for aid in collecting child support from Mr. Ogden in March of 1988. As a part of her application, Ms. O'Brien completed a referral form in which she stated that she was owed $80 per week child support but that "as the kids got older [Mr. Ogden] took $20 off." On April 14, 1988, the Buchanan County prosecutor's office notified Mr. Ogden by letter that he was $14,650 behind on his child support payments for his daughter, Candace. The letter stated Mr. Ogden was required by the original dissolution decree to pay $80 per week in child support "regardless of the number of children still living in the home."

On April 17, 1990, the Missouri Child Support Enforcement Agency issued an administrative order wherein Mr. Ogden was found to be $22,610 in arrears in his child support payments. The administrative order directed Mr. Ogden to pay $80 per week for the current support of Candace and $20 per week on the arrearage.

Mr. Ogden contested the child support enforcement agency's order and requested a hearing, which was held before an administrative hearing officer on February 20, 1991. At the hearing, Mr. Ogden argued that Ms. O'Brien had acquiesced in the reduction of child support upon the emancipation of the children. Ms. O'Brien, however, testified that she was unaware that her URESA petition had been heard by a court in Texas and that when Mr. Ogden began reducing the amount of child support upon Stacy's marriage, she "had asked the Courts about why

4. Mr. Ogden paid $480 of the arrearage through the Texas court and $640 through the Buchanan County Circuit Court.

he was dropping this." The hearing officer concluded that Mr. Ogden failed to prove by a preponderance of the evidence that Ms. O'Brien had waived her right to collect the past due child support. The hearing officer ordered the agency to amend its order to change the amount of past due support owed by Mr. Ogden to $22,380 to reflect the arrearage found by the officer. Finding that Mr. Ogden's obligation to support Candace ended as of December 31, 1989, the officer directed the child support enforcement agency to delete from its order any requirement that Mr. Ogden pay current support.

Mr. Ogden timely filed a petition for review of the administrative decision in the Buchanan County Circuit Court. After a hearing, the circuit court affirmed the decision of the hearing officer. Mr. Ogden's subsequent motion to amend the judgment was denied by the circuit court. Mr. Ogden now appeals the judgment of the circuit court affirming the hearing officer's decision.

■■■ When reviewing an administrative action, this court examines the decision of the administrative agency, not the judgment of the circuit court. *French v. French,* 782 S.W.2d 449, 451 (Mo.App.1990). This court's function on review is limited to determining whether the action of the agency is in excess of jurisdiction, unsupported by competent and substantial evidence, or is arbitrary, capricious, or unreasonable. *Id.* The evidence and all reasonable inferences from the evidence will be considered in the light most favorable to the administrative agency's findings, *Curtis v. Board of Police Com'rs,* 841 S.W.2d 259, 261 (Mo.App.1992), and deference will be given to the hearing officer's assessment of credibility. *Kansas City Club v. LIRC,* 840 S.W.2d 273, 274 (Mo.App.1992).

I.

Mr. Ogden claims as his first point on appeal that the trial court erred in affirming the hearing officer's ruling that Ms. O'Brien had not acquiesced in receiving support payments of $20 per week per child and had not waived her right to receive $80 per week. As proof of Ms. O'Brien's acquiescence, Mr. Ogden contends that:

[Ms. O'Brien] advised the Gray County court in the URESL action that she required $20.00 per week per child, she agreed through her attorney in the Gray County Texas Court proceeding that she should receive $20.00 per week per child, the Gray County Texas court ruled that she was entitled to $20.00 per week per child, and she accepted ... $20.00 per week per child for many years without objection.

■■ Before addressing Mr. Ogden's argument, it is necessary to note several precepts that govern the issues surrounding his argument. When a court awards child support for more than one child as a "lump sum," the obligor owes that amount until all the children are emancipated and cannot reduce the amount owed pro rata as the children reach majority without the prior approval of the court. *Sutton v. Schwartz,* 808 S.W.2d 15, 21 (Mo.App.1991). Furthermore, as Mr. Ogden recognizes, the granting of an amount of child support in a URESA action that is different from the amount ordered paid by a prior decree of dissolution does not, by itself, constitute a modification of the support provisions of the prior decree. *State ex rel. Howell v. Howell,* 818 S.W.2d 704, 706 (Mo.App.1991); *Morton v. Morton,* 798 S.W.2d 521, 523 (Mo.App.1990).

■■ Mr. Ogden contends not that the Texas URESA order in and by itself modified the support terms of the original dissolution decree, but that Ms. O'Brien acquiesced both in the change of the support payments from "lump sum" to "per child" and in the Texas court's order that Mr. Ogden could cease making payments for each child when the child "dies, marries, or becomes 18 years of age." He states in his reply brief that his claims of waiver and acquiescence are based on "the actions of the parties subsequent to the order." Citing *In re Marriage of Stigall,* 756 S.W.2d 184 (Mo.App.1988), Mr. Ogden maintains that Ms. O'Brien has waived any right she may have had to receive $80 per week by her acquiescence.

The facts in *Stigall* are quite similar to the facts in the instant case. In *Stigall,* the decree dissolving the marriage of Mr. and Ms. Stigall awarded custody of the two chil-

dren of the marriage to Ms. Stigall and ordered Mr. Stigall to pay $250 per month for the support of the children. Almost five years after the dissolution, Ms. Stigall filed a URESA petition which erroneously alleged that she was the wife of Mr. Stigall. At the hearing on the URESA petition, the prosecuting attorney, who was representing Ms. Stigall, announced to the court that "[t]he parties have agreed that Mr. Stigall would pay, begin paying immediately, $150.00 per month, total, or $75.00 per month per child, to Mrs. Stigall as current child support obligation." Mr. Stigall's attorney confirmed the agreement, and the trial court stated, "It's stipulated and agreed that the respondent shall pay child support in the sum of $75.00 per child per month, and stipulation approved." The parties also stipulated that Mr. Stigall was in arrears on his previously ordered child support payments in the sum of $2,000.

Almost six years after the URESA hearing, Mr. Stigall filed a motion to modify the dissolution decree alleging that the amount of support provided in the original decree had been reduced by the URESA proceeding. The court in *Stigall* recognized the principle that "orders of support in cases properly brought under the Uniform Reciprocal Enforcement of Support Act (URESA) do not, of and by themselves, constitute modification of the support provisions of a prior dissolution decree," *id.* at 187, but determined that the issue of modification could be addressed in a URESA proceeding "where both parties were before the court, and the issue had been raised and recognized by the parties." *Id.* at 188. Finding that the testimony of both Ms. Stigall and Mr. Stigall indicated that all Mr. Stigall could pay as child support was $75 per month per child and that Ms. Stigall understood that fact and was willing to accept that amount, coupled with the fact that Ms. Stigall accepted the reduced payments for six years without protesting or claiming that Mr. Stigall owed her additional money, the court concluded that Ms. Stigall waived the right to receive the amount of child support provided for in the original decree. *Id.*

While the instant case bares a striking resemblance to *Stigall*, it differs from *Stigall* in several important aspects. In *Stigall*, the URESA hearing was held before the same judge who had entered the original dissolution decree and both parties were physically present and testified. Furthermore, as was recognized in the concurring opinion, the stipulation acknowledged in open court "appear[ed] to have been understood by the parties, counsel, and the trial court as a modification of the child support obligation." *Id.* (Crow, C.J., concurring). In the instant case, the URESA hearing occurred before a Texas district court judge and only Mr. Ogden appeared in person and testified. A lack of intent to modify the original decree is evidenced by Ms. O'Brien's testimony before the administrative hearing officer that she had not realized that her URESA petition had ever been heard by a court in Texas and by her statements in the 1988 Child Support Enforcement Unit referral that she was supposed to receive $80 per month. The URESA petition did not include the information that the marriage of the parties had been dissolved or that an order of child support had been previously entered. In fact, there was no mention at the URESA hearing of the nature of the prior order of support, so there is no basis for an inference that the court intended to modify such order.

The concurring opinion in *Stigall* cautioned that the holding in the case "should be strictly limited to the unique facts before [the court]" in that case. *Id.* Because the evidence in the instant case does not demonstrate a clear understanding by the parties, their counsel, and the judge that the URESA proceeding was modifying the prior dissolution decree's support provisions, *Stigall* does not apply to this case.

Mr. Ogden also looks to the doctrine of waiver by acquiescence for support for his contention that Ms. O'Brien waived her right to receive lump sum child support payments of $80 per week. This equitable doctrine was analyzed by the eastern district of this court in *Grommet v. Grommet,* 714 S.W.2d 747 (Mo.App.1986). After reviewing many cases involving waiver by acquiescence, the court in *Grommet* observed:

[T]he defense denominated as waiver by acquiescence does not arise in the absence of some fact or circumstance which warrants the invocation of equitable considerations in order to avoid injustice.... Delay alone does not preclude the demand for full payment.... The concept called waiver by acquiescence is an equitable doctrine. We look, therefore, for some indicia of injustice such as a change in [the father's] position induced by a misconception of the [mother's] intent or the status of his court decreed obligation.

*Id.* at 751.

Mr. Ogden claims that he relied on the fact that he had an agreement with Ms. O'Brien that his child support obligation was $20 per week per child and that he could discontinue payments for each child as that child became emancipated. Had he not relied on this agreement, he contends, he "would have or at least could have asked the Court to modify its Order upon the emancipation of each of the children." He alleges that his "forbearance in not pursuing such modification was his detrimental reliance."

■ The foregoing of the right to file a motion to modify the support provisions of a dissolution decree does not constitute the detrimental reliance necessary to invoke the protection of waiver by acquiescence. *See In re Marriage of Fry,* 827 S.W.2d 772, 775–76 (Mo.App.1992) (the appellate court, inferring that the respondent in the action had argued that he had changed his position to his detriment by refraining from filing a motion to modify his child support obligation during the time period he made reduced payments, concluded that the trial court erred in applying waiver by acquiescence). As did the respondent in *Grommet,* Mr. Ogden "seeks to invoke equitable principles not to protect himself from injustice, but to retain an undeserved windfall. Under the circumstances, invocation of equity is entirely inappropriate." *Grommet,* 714 S.W.2d at 751.

The hearing officer's ruling that Ms. O'Brien had not waived by acquiescence her right to receive child support payments of $80 per week is supported by competent and substantial evidence and was not arbitrary,

capricious or unreasonable. Point one is denied.

## II.

■ As his second point on appeal, Mr. Ogden asserts that the trial court erred in affirming the hearing officer's decision that he owed past due child support. Mr. Ogden claims that the trial court was precluded from awarding a child support arrearage because there was no evidence presented in the form of a sworn statement by Ms. O'Brien or a statement from the court certifying the amount of child support arrearage as required by § 454.475.

■ Section 454.476 states that an obligor-parent who has received an order from the Director of the Division of Child Support Enforcement may request an administrative hearing as provided in § 454.475 for the purpose of contesting the Director's order. Section 454.476.4. Section 454.475 provides only for a "full and fair hearing;" it makes no specific requirements for evidence. Section 454.475; *French,* 782 S.W.2d at 451. Section 454.476.4 does state that a certified copy of the underlying court order and a sworn or certified statement of arrearage will constitute "prima facie evidence" of the validity and enforceability of the Director's order. However, as the eastern district of this court concluded in *French:*

The evidentiary requirements of section 454.476.4 are not necessary to a "full and fair hearing," they are merely the requirements to make the type of prima facie case which can only be rebutted in the limited manner described in the statute. Failure to provide the specific evidence called for in section 454.476.4 does not mean that it is impossible to prove support due, it merely means that the more favorable presumptions and burdens of the subsection will not apply.

*French,* 782 S.W.2d at 451. As long as there is sufficient competent evidence from which a hearing officer can make findings of fact and conclusions of law, a sworn or certified statement of arrearage is not required. *Id.*

In the instant case, the hearing officer had before her the original decree of dissolution

specifying Mr. Ogden's child support obligation, the stipulated dates of birth of the children, and the sworn testimony of both parties as to when Mr. Ogden stopped making child support payments for each of the children. Furthermore, the hearing officer admitted into evidence uncertified child support payment records from the Buchanan County Circuit Court as evidence of payments made through the circuit clerk's office and a "Child Support Debt Computation Worksheet" for the limited purpose of showing the child support enforcement agency's method of calculation.

Mr. Ogden did object to the admission of the uncertified payment records and the computation worksheet at the hearing. His claim on appeal, however, is not that the records were improperly admitted at the hearing, but rather that the payment records were insufficient proof of the amount of the arrearage since they lacked an accompanying affidavit. Section 454.475, however, does not require an arrearage affidavit. *See id.*

There was substantial and competent evidence from which the hearing officer could have concluded that Mr. Ogden owed past due child support in the amount of $22,380. Point two is denied.

### III.

■ As his third and final point on appeal, Mr. Ogden argues that the trial court erred in affirming the decision of the hearing officer because the Division of Child Support Enforcement failed to follow its own rules. Mr. Ogden claims that the Division violated the rules set forth in 13 CSR 30–7010 and in the Division's "Procedural Manual" in that the Division did not: (a) notify him of the amount of arrearage claimed prior to the hearing; (b) send a copy of the "CSE–57" to the hearing officer to be included as an exhibit or present it at the hearing; (c) prepare and file the required arrearage affidavit; (d) contact him prior to the hearing in order to "make every effort to resolve the problem;" (e) file "DPPY" or "DPAY" prior to the hearing as an exhibit; and (f) contact Mr. Ogden to resolve the problem.

This court cannot consider the claimed violations (b), (d), (e), and (f) because Mr. Ogden failed to make these arguments at the administrative hearing. *Dueker v. Missouri Div. of Family Serv.*, 841 S.W.2d 772, 776 (Mo. App.1992) (An issue which has not been presented for determination at the administrative hearing is not preserved for appellate review, for a "court will not set aside an administrative action unless the agency has been given a prior opportunity to consider the point") (quoting *Jackson v. Sayad*, 741 S.W.2d 847, 850 (Mo.App.1987)). Furthermore, Mr. Ogden did not establish that the evidence of the violations could not have been produced in the exercise of reasonable diligence or that such evidence was improperly excluded by the hearing officer. Section 536.140.4.

■ Alleged violations (a) and (c) appear to have been raised either in an unsuccessful motion to dismiss or at the hearing. With regard to Mr. Ogden's claim in (a) that the Division did not notify him of the amount of the arrearage prior to the hearing, notice of the amount of child support arrearage the Division claimed Mr. Ogden owed was provided in the administrative order of April 17, 1990, ten months before the hearing. Thus, Mr. Ogden's claimed violation (a) was nonprejudicial and could not invalidate the agency's action. *Missouri Nat. Educ. v. Missouri State Bd.*, 695 S.W.2d 894, 897 (Mo. banc 1985). Although Mr. Ogden did argue before the hearing officer that an arrearage affidavit should have been filed (violation (c)), this court has already found in point two of this appeal that § 454.475 does not require an arrearage affidavit as part of a full and fair hearing. Point three is denied.

The actions of the administrative agency were supported by competent and substantial evidence and were not arbitrary, capricious or unreasonable. The judgment of the trial court sustaining the decision of hearing officer is affirmed.

All concur.