Douglas E. SIEGFRIED, Respondent,

v.

Bill LARUE, Director, Division of Child Support Enforcement, Appellant,

and

Tammy R. Mortenson, Defendant.

No. WD 49224.

Missouri Court of Appeals, Western District.

Jan. 31, 1995.

Ronald D. Pridgin, Jefferson City, for appellant.

Jeffery A. Hanna, Warrensburg, for respondent.

Before HANNA, P.J., and
BRECKENRIDGE and SMART, JJ.

PER CURIAM:

This case concerns the existence and amount of child support arrearage. The Missouri Division of Child Support Enforcement (Division) proceeded against Donald E. Siegfried (father) and set the amount of past due child support at $2,247.35.

The father and Ms. Tammy Mortenson (mother) had two children, Tara and Chanda. The father and mother were divorced on April 6, 1981, at which time mother was awarded custody of the two children, and a child support order was entered by the circuit court requiring the father to pay $150 per month per child. In March 1993, the mother filed an arrearage affidavit with the Division seeking to collect the unpaid child support from the father. The father requested an administrative hearing, pursuant to § 454.476.4, RSMo 1986, which was held on October 21, 1993.

The controversy revolves around a stipulation signed by the parents on February 13, 1991, concerning temporary custody, child support and visitation. The evidence before the Hearing Officer can be summarized as follows. The stipulation placed Tara in the temporary custody of the father from February 1991 through May 1991, which was the end of Tara's school year. It also provided that so long as each parent had custody of one of the parties' two children, neither parent would pay child support to the other. The stipulation stated that the father was current in his child support payments and that his child support obligation of $300 per month was deemed satisfied for the months of February through May 1991. The provision that has caused the present trouble stated that if, at the end of the current school year, Tara elected to remain in the custody of the father, then the mother and father agreed that an action for modification of the court's order should be filed as to custody and support. If the modification motion was filed, the parties agreed that the court could enter an order granting custody of Tara to the father and that "no child support shall be awarded to either party, but each party shall be obligated to provide the support for the

child in their custody." Tara remained in her father's custody past May 1991.

At the end of the May term of school, the father testified that he and the mother had a verbal agreement that Tara would continue to reside with the father and that the stipulation would continue under the same terms. Tara continued to reside with the father from May 1991 through March 1993. There was some factual dispute of a few weeks, which the Hearing Officer resolved by finding that Tara lived with the mother in January 1993, while Tara recovered from back surgery, and then moved back with her father on February 21, 1993. On March 26, 1993, she returned to her mother's residence and has remained there ever since.

Additional evidence consisted of an affidavit signed by the mother of "No Delinquent Child Support," stating that there were no delinquent child support payments due or payable as of March 2, 1992.

The Hearing Officer affirmed the Director's Administrative Order on an Existing Order and stated that the father owed $2,247.35 in past due child support. The arrearage was determined through July 31, 1993, and was calculated as follows. Father owed support of $150 per month for the period from March 1992 (date of mother's affidavit of no delinquent payments) through January 1993 for Chanda, who was in the mother's custody. In January 1993, Tara moved back with the mother because of her back surgery and recuperation. For the time during January and February 1993, when Tara was living with her mother, the father owed support at the rate of $300 a month. During the four months of April through July 1993, Tara remained with her mother and support was determined to be $300 a month. Allowing for payments and credits, the total amount of child support arrearage was $2,247.35 through July 1993.

On November 12, 1993, the father petitioned the Circuit Court of Johnson County, Missouri, for judicial review of the administrative hearing decision. The parties appeared before the court on February 23, 1994, and, on March 8, 1994, the court found the Hearing Officer's decision to be erroneous and determined the correct amount of

father's arrearage to be $522, as of July 31, 1993. The court also awarded the father $725 in attorney fees. The Division's appeal followed.

The Division claims that the decision regarding the amount of the arrearage was supported by competent and substantial evidence. The father argues that so long as Tara remained with him, he believed there was a verbal understanding that the terms of the written agreement remained in effect and he, therefore, owed no support for Chanda, who remained with the mother. The issue presented is whether the February 13, 1991 stipulation continued past the end of the school year of May 1991, by virtue of this alleged oral agreement between the parties and acted as a waiver by the mother. In order to avoid the well settled law that prohibits out-of-court agreements to change prospectively the amount of child support, *Sutton v. Schwartz*, 808 S.W.2d 15, 18 (Mo.App. 1991), the father argues that the facts support a waiver by acquiescence, citing *Grommet v. Grommet*, 714 S.W.2d 747, 749–50 (Mo.App.1986). The principle advanced here is that "it may be an injustice to permit an obligee to collect the full amount of child support due under a decree if the obligor changed position, to his or her prejudice, in reliance on a perceived agreement with the obligee." *Sutton*, 808 S.W.2d at 19.

■ Our review is of the Division's decision, not that of the trial court. *State ex rel. Bramlet v. Owsley*, 834 S.W.2d 868, 870 (Mo. App.1992). The standard of review is set forth in § 536.140.2, RSMo 1986. We uphold the Division's decision unless it is in violation of constitutional provisions, in excess of its authority, unsupported by competent and substantial evidence on the whole record, unauthorized by law, made upon unlawful procedure or without a fair trial, arbitrary, capricious or unreasonable, or involves an abuse of discretion. *Id.*

■ There is no real dispute that there was no support due the mother through May 1991. The written stipulation between the parents provides for custody and support arrangements and the evidence supported the facts of the stipulation. The real dispute,

starting in June 1991, was whether the parents had an oral agreement to continue the written stipulation which, the father argues, acted as a waiver by acquiescence. The mother's affidavit of no support due through March 2, 1992, was an admission from which the Hearing Officer found that no support was due through that date. The parties do not dispute this finding.

After the school year ended in May 1991, the parties agreed that if Tara elected to remain in the custody of her father, an action for modification of the court's order would be filed. The language contained in the stipulation was mandatory, stating that "an action for modification of the Court's order herein *shall* be filed as to custody and support." (Emphasis added). A subsequent paragraph places the obligation of filing the motion to modify with the father. However, the father never filed such an action. The plain meaning of the stipulation is that the parents temporarily settled the custody and support matters from January to May 1991 only.

The record is vague concerning the details surrounding the alleged oral agreement that the father argues allowed him to discontinue support for both children. The father testified as follows:

Q: And the agreement, in your understanding, was that while you had temporary custody of the child you were not to pay any child support. Is that correct?

A: That's correct.

. . . . .

Q: Was it also your understanding that you were going to continue the terms of that agreement?

A: Under a verbal understanding, yes it was.

It is not clear from this testimony whether the oral agreement was anything more than the father's interpretation of the written stipulation. It cannot be determined from the evidence whether the father and the mother discussed the agreement and there was a meeting of the minds or whether the father simply assumed that since Tara continued to live with him, the written stipulation would continue.

Once a certified copy of the court order and the sworn or certified statement of the arrearage has been introduced into evidence, the burden of proof was on the father to prove a "mistake of fact" occurred. § 454.476.4, RSMo 1986. The father did not describe how he arrived at his "understanding" of this oral agreement.

It is apparent that the Hearing Officer did not find the evidence of an oral agreement concerning child support following the May 1991 school term persuasive. Instead, she held that, under the terms of the stipulation, the father had the right to petition the circuit court and he failed to do so. She determined that the father was obligated to file for a modification in the circuit court and to allow the court to determine the permanent custody and support arrangements. She reasoned that the circuit court judgment entry ordering $150 per child controlled. Nevertheless, the father was given an abatement in the amount of $150 per month for the period of time that Tara remained in his custody.

The arrearage was computed in accordance with the court order, the stipulation and the mother's March 1992 affidavit of no support due. There was substantial evidence to support the Hearing Officer's decision.

■ The father's obligation to pay child support was not thereby terminated even assuming that the mother agreed to the father's position of no child support. *Brundige v. Marcum*, 694 S.W.2d 891, 895 (Mo.App. 1985). The father's position would allow the parents to determine future child support, which the law of Missouri prohibits. An agreement between parents cannot establish a modification of future child support payments. *Owsley*, 834 S.W.2d at 871. Contrary to father's argument, parents are not permitted to bargain away their child support obligation.

■ We will not discuss our analysis of the cases cited by father to support the principle of waiver by acquiescence. Our review of those cases support the Hearing Officer's decision. The facts of this case fall far short of the facts necessary to invoke this rule of law. Those cases which have applied the principle have resulted from a need to invoke

equitable consideration in order to avoid a harsh and unjust result. *Grommet,* 714 S.W.2d at 749. The facts of this case are lacking in that there has been no showing of acquiescence by the mother to accept less than the amount stated in the court order once the term of the stipulation ran out. The cases hold that facts must be more than mere express or implied agreement to accept reduced payments or delay in demanding full payment. *Id.* at 751. On the facts of this case, the Hearing Officer's decision was legally correct by denying the principle of waiver by acquiescence. Point denied.

Our holding on the first point decides the second claimed error of the circuit court's award of attorney fees. Section 536.087, RSMo Supp.1993, requires that in order for there to be an award of attorney fees the party must prevail. A "prevailing party" is one who "obtains a favorable order, decision, judgment, or dismissal in a civil action or agency proceeding." § 536.085(3), RSMo Supp.1993. The father has not prevailed. Therefore, the attorney fee award is reversed.

The judgment of the circuit court is reversed and the cause remanded with instructions to reinstate the decision of the Division of Child Support Enforcement.