Neal Henry HONDERICK, Appellant,

v.

Annette Kay HONDERICK now Annette Kay Gallet and Missouri Department of Social Services, Respondents.

No. WD 55247.

Missouri Court of Appeals, Western District.

Jan. 12, 1999.

Linda L. Sherman, Harrisonville, MO, Attorney for Appellant,

Annette Kay Gallet, Freeman, MO Party acting pro se.

Michael S. Kisling, Mo. Department of Social Services, Jefferson City, MO, Attorney for Respondent DSS.

Before ULRICH, P.J., and SMART and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, J.

Neal Honderick (the father) appeals the circuit court's judgment affirming the decision of the respondent, the Missouri Department of Social Services, Division of Child Support Enforcement (the Division), modifying his child support obligation to Annette Gallet (the mother) for their daughter, Lindsey. The Division, adopting the decision of the hearing officer of the Department of Social Services (the HO), ordered that he pay: (1) increased child support of $361 per month, retroactive to November 21, 1995; and (2) 59 percent of Lindsey's medical expenses not covered by insurance.

The father raises four points on appeal. In his first and second points, he claims that the trial court erred in affirming the decision of the Division ordering him to pay child support in the amount of $361 per month because this amount was not determined in accordance with Rule 88.01 and Form 14, as required by law. In Point I, he claims that it was error to award modified child support to the mother in the amount of the presumed correct child support amount (PCCSA) of $361, as calculated by the HO pursuant to his Form 14, because this amount should have been rebutted in that the evidence established that the mother's actual monthly expenses for Lindsey were less than the parents' combined child support costs, as determined on line 5 of the HO's Form 14. In Point II, he claims that the HO's Form 14 PCCSA, on which the

award of support was based, was incorrectly calculated because, in the HO's calculation, the mother's gross monthly income was understated in that the HO imputed to her gross monthly income of $1,733.33, while the evidence supported an imputed amount of $2,294.25. In his third point, he claims that the Division erred in requiring him to pay 59 percent of Lindsey's uncovered medical expenses because the evidence established that his income represented only 52.07 percent of the parents' combined adjusted gross income. In his fourth point, he claims that the Division erred in ordering the modified child support retroactive to November 21, 1995, because the record supports the fact that he was not responsible for the delays in the modification proceeding which were cited by the trial court as the basis for the retroactive award.

We affirm in part and reverse and remand in part.

### Facts

On May 21, 1987, a decree of dissolution was entered by the Circuit Court of Cass County, Missouri, dissolving the marriage of the mother and father. They were awarded joint legal custody of Lindsey, the only child born of the marriage, with primary physical custody to the mother. The father was ordered to pay child support in the amount of $165 per month.

In November 1993, the mother requested, pursuant to § 454.400.2(13),[1] that the Division review the child support award entered by the circuit court to determine whether modification was appropriate. Upon completion of the review, the Division determined that the application of the guidelines and criteria set forth in Rule 88.01[2] to the current financial circumstances of the parties resulted in a change of child support from the existing amount by twenty percent or more. As such, the Division determined, pursuant to § 452.370, that a *prima facie* showing had been made of a change of circumstances so substantial and continuing as to make the existing award unreasonable and

that, as a result, modification of the child support award was appropriate.

On March 13, 1995, the Division, pursuant to § 454.496.1, filed an administrative motion to increase the father's child support obligation to $360 per month. The father, pursuant to § 454.496.1, objected to the proposed increase in child support and requested that a hearing be conducted pursuant to § 454.475, providing that the hearing be conducted by a hearing officer of the Missouri Department of Social Services.

The hearing on the motion to modify before the HO was originally scheduled for August 18, 1995. On August 14, 1995, the father requested a continuance because his original attorney had withdrawn, and his new attorney needed more time to prepare. As a result, the hearing was rescheduled for September 29, 1995. The hearing was rescheduled again for December 4, 1995, due to the mother's failure to comply with discovery requests from the father. When the hearing was convened on December 4, 1995, the mother had still not fully complied with the father's requests for discovery. As a result, the hearing was again rescheduled. Finally, on February 22, 1996, a hearing was held on the Division's motion to modify, with the father appearing in person and by counsel and the Division and the mother appearing by telephone.

The Division, as the movant, submitted for consideration by the HO, in determining the PCCSA, a completed Form 14, as required by Rule 88.01. In its Form 14, the Division listed the mother's adjusted gross monthly income as $1,430 and the father's as $2,154.59, resulting in a combined adjusted gross monthly income of $3,584.59. This resulted in a combined support obligation for the parents of $598.24 per month, after $19.24 was included for the cost of health insurance. Dividing each parent's adjusted gross monthly income by the combined adjusted gross monthly income resulted in the father's proportionate share being 60.11 percent and a PCCSA of $360 per month.

---

1. All statutory references are to RSMo 1994, unless otherwise indicated.

2. All rule references are to the Missouri Rules of Civil Procedure, unless otherwise indicated.

The father submitted a Form 14 indicating what he believed to be the correct figures to be used for a determination of the PCCSA. He listed his adjusted gross monthly income as $2,154 per month and the mother's as $2,650 per month, resulting in a combined child support obligation of $653 per month. He argued at the hearing that the mother's monthly expenses for Lindsey totaled only $551 per month and that this was the correct amount from which to determine his child support obligation. He further argued that his income represented 46.18 percent of the parents' combined gross income and that applying this percentage to the $551 resulted in a reasonable child support amount of $254, not $361.

The mother did not submit a Form 14, but testified as to her monthly income and expenses. As to her income, she denied that her monthly income was $2,650, as the father argued, but was, at most, $1,750 per month. She testified that she was currently unemployed and that her actual monthly income was approximately $1,250 per month, which she received from unemployment compensation and rental payments. She testified that she had previously been employed as a bus driver for a private charter company earning $7.50 per hour plus gratuities. She testified that she also had previously been an animal control officer earning $9 per hour and a school bus driver earning approximately $8,000 to $10,000 a year. She also testified that in the past she had supplemented her income by doing construction and entertainment work. She indicated that she no longer did construction work but was seeking opportunities to continue her entertainment work. She further testified that she was seeking regular employment which would accommodate her family schedule.

The mother also testified as to her monthly expenses for herself and her children. She stated that she owned the home in which she and the children lived but paid $610 per month on first and second mortgages on a house that she owned and for which she received rental payments. She stated that the total monthly household expenses for herself, her son from a previous marriage, and Lindsey were $628 per month or approx-imately $210 per person. She further testified that her other expenses for the children, including food, clothing, medical care, drugs, dental care, recreation, laundry, beauty and barber shop, school and books, and school lunches were $682 per month or $341 per child. The mother agreed that her total monthly expenses for Lindsey were $551 per month.

At the hearing, the father's attorney questioned the mother about the balance of her bank account and deposits she made into it. She testified that she had deposited the proceeds from the second mortgage on her rental property in the amount of $17,000. The father argued that the mother's bank records indicated that she had made deposits in addition to the loan proceeds totaling $31,416. She denied this, but could not state for certain how much she had deposited. She indicated that she had deposited her tax refund of $1,708 and an inheritance of $6,200, but she could not account for cash deposits of $1,800 and $1,000 or checks deposited in the amounts of $1,465 and $1,357, which were indicated on her bank statements. She also agreed that she had made several other deposits, less cash received.

The father testified that he was employed by the City of Belton and that his monthly income was $2,334. He also stated that he made child support payments in the amount of $165 per month for the support of Lindsey and $180 per month for the support of another child not at issue here. Both of these payments were current. He further testified that he lived with his current wife and her two children and that his wife's monthly income was $1,262. He testified that his total monthly expenses for himself, his wife, and one of her children totaled $3,300 while his net take-home pay totaled $1,262. The father also testified that he provided health insurance for Lindsey through his employer at a cost of $68 per month. The father asked that any child support award not be made retroactive as he was not responsible for any of the delays in the proceedings.

The HO determined that the Division had met its burden under § 454.496.5 to show that modification was appropriate. In determining the PCCSA, the HO rejected both the

Division's and the father's Form 14's and completed his own, wherein he determined that the father's adjusted gross monthly income was $2,492.52 and the mother's was $1,733.33, for a combined adjusted gross monthly income of $4,225.85, resulting in a combined support obligation of $649.57 per month, after the cost of insurance was added. The HO further determined that the father's adjusted gross monthly income represented 58.98 percent of the parents' combined adjusted gross income, resulting in a PCCSA of $361 per month after giving credit to the father for the $22.57 per month he paid for Lindsey's health insurance.

On March 13, 1996, the HO entered his order, pursuant to § 454.475.3, increasing the father's child support obligation to $361 per month, retroactive to November 21, 1995, and entering a separate order requiring him to pay 59 percent of Lindsey's uncovered medical expenses, pursuant to § 454.633.3. Pursuant to § 454.475.5 this order became the decision of the Division which the father appealed by filing a petition for judicial review in the Circuit Court of Cass County, Missouri. The trial court, the Honorable Mary Ellen Young, found that the Division's decision was supported by substantial and competent evidence, was not arbitrary, capricious, or unreasonable, and was authorized by law. The decision was affirmed by the trial court on October 26, 1997.

This appeal follows.

### Standard of Review

On appeal from the circuit court's judgment in an action filed pursuant to § 454.475.5 for judicial review of a decision of the Division modifying a child support award, we review the decision of the Division, not the judgment of the circuit court. *State ex rel. Bramlet v. Owsley*, 834 S.W.2d 868, 870 (Mo.App.1992). Our review is limited to determining whether the Division's decision was in violation of a constitutional principle, was unsupported by competent and substantial evidence on the whole record, was unauthorized by law, was made upon unlawful procedure or without a fair trial, was arbitrary, unreasonable, or capricious or was an abuse of discretion. *Siegfried v. Larue*, 891

S.W.2d 556, 558 (Mo.App.1995). In our review, we view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the Division's decision. *Ogden v. Henry*, 872 S.W.2d 608, 611 (Mo.App.1994). In doing so, we defer to the HO's assessment of the credibility of witnesses. *Id.* If the evidence permits either of two opposed findings, we must accept the finding of the Division. *Owsley*, 834 S.W.2d at 870.

### I.

In his first point, the father claims it was error to award modified child support to the mother in the amount of the PCCSA of $361, as calculated by the HO pursuant to his Form 14, because this amount should have been rebutted in that the evidence established that the mother's actual monthly expenses for Lindsey were less than the parents' combined child support costs, as determined on line 5 of the HO's Form 14 as required. In making this claim, the father does not challenge the appropriateness of the modification, but only the amount of his modified child support obligation.

The instant case involves a motion for an administrative modification of child support filed by the Division pursuant to § 454.496.1. Because the father objected to the modification, he requested a hearing pursuant to § 454.496.1, which required the hearing to be conducted pursuant to § 454.475. At the hearing, the Division, pursuant to § 454.496.5, had the burden of proving that the modification of the father's child support obligation was appropriate under the provisions of § 452.370, governing court-ordered modifications. Section 452.370.2 provides, *inter alia*, that once modification is found to be appropriate, child support is to be determined pursuant to Rule 88.01.

The HO, in determining the correct amount of child support to be awarded, was required to follow the two-step Rule 88.01 procedure outlined in *Neal v. Neal*, 941 S.W.2d 501, 504 (Mo. *banc* 1997) (*citing Woolridge v. Woolridge*, 915 S.W.2d 372 (Mo. App.1996)). In the first step, the HO was required to determine and find for the record the PCCSA by utilizing Civil Procedure

Form 14. *Id.* In this respect, both the Division, as the movant, and the father were required to submit a completed Form 14 for the HO to consider. *Woolridge,* 915 S.W.2d at 380. In determining the PCCSA, the HO was required to either accept the Form 14 of the Division or the father, or reject both and complete his own. *Id.* at 380–81. In step two, having determined the PCCSA, the HO was required to consider whether this amount should be rebutted up or down as being unjust or inappropriate, after considering all relevant factors. *Id.* at 379. The burden was on the father to show that the PCCSA calculated by the HO was unjust or inappropriate. *Elliott v. Elliott,* 920 S.W.2d 570, 575 (Mo.App.1996). Unlike a Form 14 calculation of the PCCSA, there is no formula to be used in determining whether the PCCSA should be rebutted. *Woolridge,* 915 S.W.2d at 379. It was within the sound discretion of the HO whether to rebut the PCCSA. *Id.*

As stated, *supra,* both the Division and the father submitted a Form 14 as required, which the HO rejected and completed his own. In his Form 14, the HO determined that the PCCSA was $361, which he found was just and appropriate and had not been rebutted. The father contends that the HO's Form 14 PCCSA should have been rebutted as being unjust and inappropriate because the mother testified that Lindsey's actual monthly expenses were less than the parents' combined child support costs on which the PCCSA was based. In this respect, he contends that the mother testified that her expenses for Lindsey totaled $551 per month, which was less than the parents' combined child support costs of $649.57, as determined by the HO. As a result, he argues that it was error to award child support based on the PCCSA calculated by the HO.

The respondent contends that the father did not meet his burden of proving that the PCCSA established by the HO's Form 14 was unjust and inappropriate, requiring it to be rebutted. Although the Division concedes that the mother testified to a monthly need of $551 for Lindsey, it argues that this testimony was in response to a long litany of leading questions from the father's attorney which ignored the expense information already provided by her, which established an actual need greater than the parents' combined child support costs. Consequently, the respondent argues that the mother's testimony was not sufficient to rebut the PCCSA, as established by the HO pursuant to his Form 14.

■ "A party's testimony [as] to [a child's] expenses constitutes sufficient evidence on which to base a child support allowance." *In re Marriage of Cohen,* 884 S.W.2d 35, 39 (Mo.App.1994). The amount of support awarded must be limited to the demonstrable financial need to support the child of the party receiving the support. *Heins v. Heins,* 783 S.W.2d 481, 483 (Mo.App.1990). When the custodial parent has testified that the demonstrable financial need of the child is less than the parents' combined child support costs established by Form 14, the PCCSA is rebutted. *Peery v. Peery,* 933 S.W.2d 912, 916 (Mo.App.1996).

> [W]hen a custodial parent gives evidence as to the children's financial needs under that parent's care, the presumed amount of child support ... under Form 14 has been rebutted. When a party introduces evidence controverting a presumed fact, the fact must then be determined from the evidence in the case as if no presumption had ever been in operation.

*Harding v. Harding,* 826 S.W.2d 404, 407 (Mo.App.1992). Thus, in determining whether the HO calculated the father's modified child support obligation in accordance with Rule 88.01, the issue for us to decide is whether the mother's testimony as to her monthly expenses for Lindsey required the HO to rebut downward his Form 14 PCCSA and award child support in an amount less than the $361 awarded.

The record reflects that the mother testified that the expenses she incurred for Lindsey totaled $551 per month. This testimony was supported by the income and expense statement provided by her to the HO, which indicated that her monthly expenses for Lindsey totaled $555.66 and were as follows: (1) $71 for utilities; (2) $88.33 for automobile expenses; (3) $43.33 for insurance; (4) $12 for taxes; (5) $100 for food; (6) $50 for

clothing; (7) $5 for medical care; (8) $5 for prescription drugs; (9) $5 for dental care; (10) $120 for recreation; (11) $10 for laundry and cleaning; (12) $7.50 for barber and beauty shop; (13) $2.50 for school and books; and (14) $36 for school lunches. As such, the evidence reflected that the mother's actual monthly expenses for Lindsey were, at most, $555.66, which was substantially less than the parents' combined child support costs of $649.57 as calculated and used by the HO in determining the father's child support obligation.

■ Although a custodial parent's testimony that the child's financial need is lower than the parents' combined child support costs or expenses established by Form 14 rebuts the PCCSA, it does not mandate that the award be based on the lower amount. *Id.* at 408. However, if the award is based on the higher amount, rather than the lower amount, the trial court, in this case the HO, must cite factors supporting the award based on the higher amount, and it is an abuse of discretion not to do so. *Id.* at 407.

■ In the instant case, the mother testified that her actual monthly expenses for Lindsey were less than the parents' combined child support costs established by the HO's Form 14. And, although the HO recited in his order that his Form 14 PCCSA was just and appropriate, he cited no specific factors supporting an award of child support based on the calculated combined child support costs of the parents which were greater than the actual expenses for Lindsey, as testified to by the mother. As such, the Division abused its discretion, requiring us to remand for a determination of the father's reasonable child support obligation based on the demonstrated need for Lindsey and other relevant factors as required by Rule 88.01. *Id.* at 407.

## II.

In his second point, the father claims that the HO's Form 14 PCCSA, on which the award of support was based, was incorrectly calculated because, in the HO's calculation, the mother's gross monthly income was understated in that the HO imputed to her gross monthly income of $1,733.33, while the

evidence supported an imputed amount of $2,294.25. As in Point I, the father does not challenge the appropriateness of modification, but only the amount of his modified child support obligation.

■ A Form 14 calculation of the PCCSA begins with a determination of each parent's gross monthly income. Direction for Completion of Form 14, Worksheet, line 1. The "Directions for Completion of Form 14" define gross income as "income from any source," other than AFDC payments, medicaid benefits, supplemental security income benefits, food stamps, general assistance benefits, other public assistance benefits having eligibility based on income, and child support received for other children. The Directions further provide that if one parent is either unemployed or underemployed, his or her child support obligation may be determined based on his or her potential or imputed income. The issue presented, when income is imputed to a party, is whether the evidence supports the amount of income imputed. *Jones v. Jones,* 958 S.W.2d 607, 611–12 (Mo.App.1998) (*citing State ex rel. O.A. by Atkinson v. Anthony,* 947 S.W.2d 832, 834–35 (Mo.App.1997)). When imputing income to a parent, consideration is given to his or her past and present earnings and anticipated future earning capacity. *Id.* A party may not escape his or her child support obligation by voluntarily declining to work, by deliberately limiting his or her work to reduce income, or by otherwise disabling himself or herself financially. *Id.* A court may impute income to a party according to what he or she could have earned by the use of his or her best efforts to gain employment suitable to his or her capabilities. *Id.* However, an award of child support must be supported by evidence of the party's ability to pay. *Id.*

■ The HO imputed income to the mother in the amount of $1,733.33 per month based on his belief that she was capable of earning $10 per hour in a full-time job. The father argues that the evidence supported the imputing of gross income to the mother in the amount of $2,294.25 per month. In so arguing, the father claims that the HO ignored evidence concerning the mother's actu-

al income. He contends that the Division's own evidence established that she had actual income of $1,362 per month. As to additional income, he points to the evidence that the mother made unaccounted-for cash deposits in 1995 that would annualize to $379 per month; that she could earn $97.75 per month through her entertainment work; and that she had gross income of $473.50 per month from her rental property. He also points to the fact that she must have had monthly income greater than the amount she claimed to have at the hearing in order to support her claimed recreation expenses of $360 per month. The Division contends that, not only was the mother's monthly income not greater than that imputed to her by the HO, but that the $1,733.33 imputed was actually too high. In this respect, the Division contends that the evidence established that her gross monthly income was, at most, $1,717.75, based on the following amounts: (1) $1,272.32 per month earned from unemployment; (2) $26.09 per month from her entertainment work; (3) $40.34 per month from her rental property; and (4) $379 per month in unidentified cash deposits.

The HO was free to believe the mother's testimony in part or *in toto,* and we must defer to his assessment of her credibility on this issue. *Ogden,* 872 S.W.2d at 611. Further, we note that the $10 per hour imputed to the mother by the HO was more than she had earned in the past. From this, we can infer that the HO accepted, to some degree, the father's contention that her monthly income should have reflected some earnings from her entertainment work and the rental property.

For the foregoing reasons, we find that the record supports the HO's decision to impute income of $10 per hour to the mother. As such, he did not err in imputing gross monthly income to her of $1,733 and using this amount in the calculation of the PCCSA of $361 per month.

Point denied.

## III.

In his third point, the father claims that the Division erred in ordering him to pay 59 percent of Lindsey's uncovered medical expenses because the evidence established that his income represented only 52.07 percent of the parents' combined gross income. In this point, the father is not attacking the child support award, which did not include an amount for uncovered medical expenses, but only the separate order concerning the same.

Section 454.633.3 governs the payment of uncovered medical expenses of a child by his or her parents and provides, in pertinent part, as follows:

> As between parents, responsibility for the child's care expenses that are not covered by a health benefit plan may be equitably apportioned between the parents by the court or the division, in percentage shares based on their income, or based on a written agreement of the parties. If the order or agreement fails to designate the shares applicable to the parents, then each parent shall be liable for fifty percent of such expenses.

As to uncovered medical expenses, Form 14 provides for the inclusion of extraordinary medical expenses, defined as expenses which are uninsured expenses in excess of $100 for a single illness or condition, in a calculation of the PCCSA. Directions for Completion of Form 14, Worksheet, line 4d. Whereas, the payment of uncovered non-extraordinary medical expenses are to be handled by a separate order. *Id.*

In the instant case, no extraordinary medical expenses were included in the HO's calculation of the PCCSA. As such, the order issued by the HO for the father to pay 59 percent of uncovered medical expenses was only for the payment of non-extraordinary medical expenses. The HO's order as to uncovered medical expenses was based on the parents' proportionate shares of the combined adjusted gross income. Thus, in challenging the percentage he was ordered to pay of uncovered medical expenses as being too high, what the father is really attacking is the HO's findings as to the parents' adjusted gross monthly income. Inasmuch as we determined, *supra,* that the record supports the HO's determination of the parents' ad-

justed gross monthly incomes, the father's claim here must fail.

Point denied.

## IV.

In his fourth point, the father claims that the Division erred in ordering retroactive child support effective November 21, 1995. The father claims that the mother was not entitled to retroactive child support to this date because the record supports the fact that any delays in the modification proceeding, cited by the HO as the basis for the retroactive award, were caused by her failure to comply with his discovery requests and not by any actions he took. We disagree.

Section 454.496.4 allows an administrative award of child support to be made retroactive to the date of the service of the motion to modify. Whether to make an award of child support retroactive is within the sound discretion of the fact finder. *Farr v. Cloninger,* 937 S.W.2d 760, 763 (Mo.App. 1997). In deciding whether to order a modification retroactive, the fact finder should consider all factors relevant to the issue and balance the equities as called for by the facts and circumstances of the particular case. *Id.* The fact finder's determination of the effective date of the modified child support amount should not be disturbed absent an abuse of discretion. *Snell v. Snell,* 916 S.W.2d 414, 416 (Mo.App.1996). An abuse of discretion occurs where the choice of the effective date is clearly against the logic of the circumstances and is so arbitrary and capricious as to shock the sense of justice and indicate a lack of careful consideration. *Porath v. McVey,* 884 S.W.2d 692, 697 (Mo. App.1994).

The motion to modify was served on the father on March 31, 1995. As a result, the HO was authorized, pursuant to § 454.496.4, to order the modified child support award retroactive to that date, but declined to do so. In making the modified award retroactive only to November 21, 1995, the HO determined that there had been three continuances in the modification proceeding, with the father being responsible for the first six-week continuance from August 18, 1995, to September 29, 1995, because he changed attorneys. He further determined that the mother was responsible for the second and third continuances due to her failure to produce requested discovery. In this respect, he determined that the mother had fully complied with the father's discovery requests by December 6, 1995. Given this fact, he made the modification retroactive to six weeks prior to this date and made it effective on the next scheduled due date which was November 21, 1995. The HO did not indicate why he did not consider for retroactivity the time between the date of the service of the motion, March 31, 1995, and the date the hearing was first scheduled, August 18, 1995.

The father claims that it was an abuse of discretion to order the modified child support to be effective to November 21, 1995, because the first continuance in the case was not due to his change of attorney, but to the mother's failure to appear at the first scheduled hearing. He also argues that every other continuance was due to the mother's failure to produce all requested discovery and that his first opportunity to be heard on the motion to modify was February 22, 1996. As such, he argues that making the modification retroactive to November 21, 1995, only served to punish him for the mother's recalcitrance.

As stated, *supra,* the HO could have made the modification retroactive to March 31, 1995, regardless of any delays in the proceeding. He declined to do so without any stated reason for this decision. In any event, as to the stated basis for the retroactive award, the record supports the HO's finding that both parties were responsible for some delay in the proceedings. As such, the HO's decision as to the retroactivity of the child support award was supported by the record and was not arbitrary or capricious. Hence, we cannot find that the Division abused its discretion in ordering the modified child support award retroactive to November 21, 1995.

Point denied.

## Conclusion

The judgment of the circuit court, affirming the decision of the Division modifying the

award of child support from the father to the mother, retroactive to November 21, 1995, and ordering the father to pay 59 percent of all uncovered medical expenses, is affirmed, except as to the amount of the modified award which is reversed. The cause is remanded to the circuit court with directions to enter its order remanding the cause to the Division for a determination of the father's reasonable child support obligation based on the demonstrated monthly financial need for the child, Lindsey, and all other relevant factors, as required by Rule 88.01.

All concur.